Laurie LEE, Appellant,

v.

**GRINNELL MUTUAL REINSURANCE COMPANY, Appellee.**

No. 00–1656.

Supreme Court of Iowa.

June 12, 2002.

Rehearing Denied July 10, 2002.

Mindi M. Vervaecke of Fitzsimmons & Vervaecke Law Firm, P.L.C., Mason City, for appellant.

Rustin T. Davenport and David E. Schrock of De Vries, Price & Davenport, Mason City, for appellee.

TERNUS, Justice.

The appellee, Laurie Lee, was injured in a motor vehicle accident while a passenger in a car owned by Rex Bergo, Jr. She sued the appellant, Grinnell Mutual Reinsurance Company (Grinnell Mutual), seeking underinsured motorist (UIM) benefits under an automobile policy issued to Bergo by Grinnell Mutual. The district court granted summary judgment to the insurer because Lee was not an "insured person" under the policy definition of that term contained in the UIM coverage.

On appeal, Lee argues that Iowa Code section 516A.1 (1997) requires that any person insured under the liability coverage of a policy also be provided UIM benefits. Although the Grinnell Mutual policy at issue here did not include passengers as insureds under the liability coverage, Lee contends that Iowa Code chapter 321 requires that liability policies issued to owners of motor vehicles registered in Iowa must insure any person "using" the insured vehicle with the permission of the named insured, a category that includes passengers. *See* Iowa Code §§ 321.1(24A), .20B (Supp.1997). Lee reasons that, as a consequence of these statutory provisions, liability coverage for passengers should be read into the Grinnell Mutual policy. Once passengers become insured under the liability coverage, Lee asserts, they are automatically insured under the UIM coverage pursuant to section 516A.1.[1]

Grinnell Mutual disputes Lee's interpretation of the pertinent statutes and contends chapter 321 does not require it to insure—for liability purposes—persons using the insured vehicle. It also asserts that its failure to include persons merely using the insured vehicle as insureds under the UIM coverage is designed to avoid a duplication of coverage and therefore is permitted by Iowa Code section 516A.2 (1997).

Upon our review of the applicable statutes and the legislative intent evidenced by the statutory scheme, we agree with Lee that coverage for persons "using" the insured motor vehicle must be read into liability policies issued pursuant to chapter 321 and not otherwise extending such protection. Additionally, insurers must provide UIM coverage to those persons included as insureds under the liability coverage, absent a valid exclusion. It follows then that any UIM coverage provided in a motor vehicle liability policy must likewise insure persons "using" the insured motor vehicle with the named insured's consent, notwithstanding a more restrictive policy definition of "insured person."

With respect to the policy before us, we reject Grinnell Mutual's contention that the narrow policy definition of insured set forth in its UIM coverage was designed to avoid duplication of coverage. Therefore, Lee is insured under the UIM provisions of the Grinnell Mutual policy to the extent her use of the insured vehicle was with the permission of the named insured.

In view of our interpretation of the governing statutes, we hold the district court

---

1. Lee makes two additional claims that we do not address in this decision. She asserts that because she is an insured for purposes of the medical payments coverage of the Grinnell Mutual policy, she is required to be insured under the UIM coverage. In addition, Lee contends the insurer's failure to provide UIM coverage to non-relative passengers defeats the purpose of the UIM statute and is against public policy. Because we resolve the appeal on other grounds, we need not discuss these contentions.

erred in granting summary judgment to the insurer. Consequently, we reverse and remand for trial. A more detailed explanation of the basis for this decision follows.

## I. *Background Facts and Proceedings.*

On March 17, 1998, Lee was a passenger in a motor vehicle driven by Katie Bergo and owned by Katie's father, Rex Bergo, Jr. This vehicle was in an accident with a car owned and operated by Marian Johnson. Johnson allegedly ran a stop sign and collided with the Bergo vehicle, causing injuries to Lee.

Lee brought suit against Johnson seeking tort damages and against Grinnell Mutual seeking UIM benefits. Her claim against Johnson was eventually settled. Meanwhile, Grinnell Mutual filed a motion for summary judgment, asserting that, under its policy, "underinsured coverage is only provided to the policyholder, relative, or another person driving the policyholder's car." Because it was undisputed that Lee did not fall within any of these categories, the district court granted Grinnell Mutual's motion and entered judgment in its favor on Lee's UIM claim. This appeal followed.

## II. *Applicable Principles of Review.*

■ This court reviews a summary judgment ruling on error. *Nicodemus v. Milwaukee Mut. Ins. Co.,* 612 N.W.2d 785, 786 (Iowa 2000); Iowa R.App. P. 6.4. "A summary judgment will be affirmed when the moving party has shown no genuine issues of material fact exist and the party is entitled to judgment as a matter of law." *Whicker v. Goodman,* 576 N.W.2d 108, 110 (Iowa 1998); *accord* Iowa R. Civ. P. 1.981(3). In a case such as the one before us, where the facts are undisputed, this court simply determines "whether the district court correctly applied the law."

*Krause v. Krause,* 589 N.W.2d 721, 724 (Iowa 1999).

■ When the parties offer no extrinsic evidence on the meaning of policy language, the interpretation and construction of an insurance policy are questions of law for the court. *Pudil v. State Farm Mut. Auto. Ins. Co.,* 633 N.W.2d 809, 811 (Iowa 2001); *Tropf v. Am. Family Mut. Ins. Co.,* 558 N.W.2d 158, 159 (Iowa 1997). We view the provisions of an insurance policy "in a light favorable to the insured." *A.Y. McDonald Indus. v. Ins. Co. of N. Am.,* 475 N.W.2d 607, 619 (Iowa 1991). "[T]he cardinal principle is that the intent of the parties must control; and except in cases of ambiguity this is determined by what the policy itself says." *Id.* at 618.

■ Notwithstanding the principle that the meaning of an insurance contract is generally determined from the language of the policy, statutory law may also affect our interpretation of policy provisions. In discussing the application and effect of Iowa's uninsured/underinsured motorist statute, chapter 516A, this court has stated:

A statute that authorizes a contract of insurance has application beyond merely permitting or requiring such a policy. The statute itself forms a basic part of the policy and is treated as if it had actually been written into the policy. The terms of the policy are to be construed in light of the purposes and intent of the applicable statute.

*Tri–State Ins. Co. v. De Gooyer,* 379 N.W.2d 16, 17 (Iowa 1985) (citations omitted). Consequently, when a policy provision conflicts with a statutory requirement, the policy provision is ineffective and the statute controls. *Matthess v. State Farm Mut. Auto. Ins. Co.,* 548 N.W.2d 562, 564 (Iowa 1996). Thus, a determination of the coverage provided by the Grinnell Mutual

policy also requires an interpretation of the pertinent statutes.

▮ Our goal in the interpretation of legislative enactments is to give effect to the intent of the legislature. *Mewes v. State Farm Auto. Ins. Co.,* 530 N.W.2d 718, 722 (Iowa 1995). This intent is gleaned from the words used in the statute. *Lockhart v. Cedar Rapids Cmty. Sch. Dist.,* 577 N.W.2d 845, 847 (Iowa 1998). Although the court cannot enlarge or otherwise change the terms of a statute, "[w]e will not construe a statute in a way that would produce impractical or absurd results." *Carolan v. Hill,* 553 N.W.2d 882, 887 (Iowa 1996). Rather, we seek a reasonable interpretation that will accomplish "the purpose of the statute and redress the wrongs the legislature sought to remedy." *Mewes,* 530 N.W.2d at 722. With these general principles in mind, we turn to the issues at hand.

III. *Is Lee Insured Under the UIM Coverage of the Grinnell Mutual Insurance Policy?*

A. *Policy provisions.* The Grinnell Mutual insurance policy contains the following definition of "insured" for purposes of liability coverage:

> As used in this Part, "insured person" or "insured persons" means:
>
> (1) You;
>
> (2) A relative;
>
> (3) Any person driving your insured car;
>
> (4) Any other person or organization, but only with respect to legal liability for:
>
>> (a) The acts or omission of you or a relative while driving or occupying your insured car;
>>
>> (b) The acts or omissions of any person while driving your insured car; or
>>
>> (c) The acts or omissions of you or a relative while driving or occupying

any private passenger car or utility car which is not owned, hired, rented, or leased by that person or organization.

The definition of insured in the UIM coverage is similar:

> As used in this Part:
>
> (1) "Insured person" means:
>
>> (a) You or a relative;
>>
>> (b) Any other person driving your insured car; or
>>
>> (c) Any person for damages that person is entitled to recover because of bodily injury to you, a relative, or another driver of your insured car.

The policy defines the words "you" and "your" to mean "the policyholder named in the declarations and spouse if living in the same household."

It is undisputed that Lee does not fall within the policy definitions of "insured person." Lee is not the policyholder, nor is she related to the policyholder. To otherwise qualify as an insured she must be "driving" the insured auto. Lee concedes that as a mere passenger she was not driving the insured vehicle.

Notwithstanding the language of the policy, Lee asserts we should incorporate into the contract the requirements of chapters 321 and 516A as if those requirements had been written into the policy. We first turn to the requirements of chapter 321.

▮ B. *Chapter 321 and liability coverage.* In 1997 the legislature enacted a new law relating to "financial liability coverage for motor vehicles." 1997 Iowa Acts ch. 139 (codified in part at Iowa Code chapter 321 (Supp.1997)). Before we discuss the substantive provisions of this statute, we address Grinnell Mutual's assertion that the new law does not apply to the policy issued to Bergo because the law had

not gone into effect at the time of the accident.

The accident at issue here occurred on March 17, 1998. The 1997 act was approved on May 9, 1997, and was to take effect on January 1, 1998, provided "an appropriation is made in accordance with section 25B.2, subsection 3." *See id.* §§ 17–18. Iowa Code section 25B.2(3) requires that the legislature fund any new mandate imposed on a political subdivision before the political subdivision is required to perform the mandated activity or provide the mandated service. Iowa Code § 25B.2(3) (1997). Grinnell Mutual asserts that no specific appropriation of funds appears to have been made and therefore, when the accident occurred, the financial liability coverage law was not in effect.

The problem with Grinnell Mutual's argument is that it cannot be determined from the record made here whether and to what extent the 1997 act was not funded. More importantly, the 1998 general assembly repealed that part of the 1997 act making the effective date conditional on compliance with section 25B.2(3). 1998 Iowa Acts ch. 1121, § 8. Not only did the 1998 act repeal the funding requirement included in the 1997 act, it also provided that the 1998 act, "being deemed of immediate importance, takes effect upon enactment *and applies retroactively to July 1, 1997.*" *Id.* § 9 (emphasis added). Grinnell Mutual has not challenged the validity of the repeal and its effective date. Therefore, we hold the 1997 amendments to chapter 321 govern the insurance contract issued in this case. We now turn to the provisions of the 1997 act.

One of the amendments made to chapter 321 in 1997 was the addition of the following provision:

[A] person shall not drive a motor vehicle which is registered in this state on the highways of this state unless finan-

cial liability coverage, as defined in section 321.1, subsection 24A, is in effect for the motor vehicle and unless the driver has in the motor vehicle the proof of financial liability coverage card issued for the motor vehicle.

Iowa Code § 321.20B(1) (Supp.1997). The phrase "financial liability coverage" is defined, in part, as

*a.* An owner's policy of liability insurance which is issued by an insurance carrier authorized to do business in Iowa to or for the benefit of the person named in the policy as insured, and insuring the person named as insured *and any person using an insured motor vehicle* with the express or implied permission of the named insured against loss from liability imposed by law for damages arising out of the ownership, maintenance, or use of an insured motor vehicle within the United States of America or Canada, but subject to minimum limits, exclusive of interest and costs, in the amounts specified in section 321A.21 or specified in another provision of the Code, whichever is greater.

*Id.* § 321.1(24A)(*a*) (emphasis added). To summarize the relevant portions of the new law, the owner of a motor vehicle must buy liability coverage insuring the policyholder and any person "using" the insured vehicle with the named insured's consent *and* must carry a card in the vehicle proving the purchase of such coverage.

The financial liability coverage law did not, however, impose obligations solely on owners of motor vehicles registered in Iowa. Automobile liability insurers were also affected. The "proof of financial liability coverage card" that a driver must carry in the motor vehicle means, in pertinent part, "a liability insurance card issued under section 321.20B." *Id.* § 321.1(54A).

Section 321.20B(2)($a$) requires an insurer to "issue to its insured owners of motor vehicles registered in this state a financial liability coverage card for each registered motor vehicle insured." This card must show, among other things, "the type of coverage provided" and "the expiration date of the applicable insurance coverage." *Id.* § 321.20B(2)($a$).

Lee argues these provisions, considered in their entirety, require an insurer who issues a liability policy to an Iowa motor vehicle owner to provide "financial liability coverage" as that term is defined in chapter 321. Grinnell Mutual responds that the financial liability coverage law "does not impose duties upon an insurance company, nor does it delineate types of insurance coverage required to be provided."

While it is true that the statute does not expressly require insurers to issue liability insurance policies that meet the statutory definition of "financial liability coverage," any other interpretation of the statute would lead to absurd results and defeat the purpose of the law. Clearly, the intent of the legislature in requiring insurers to issue cards to their insureds is to have the cards serve as verification that the owner has purchased the insurance required by chapter 321, i.e., financial liability coverage. *See* Iowa Code §§ 321.1(54A), .20B(1) (referring to card as a *"proof* of *financial liability coverage* card" (emphasis added)). It would be absurd to allow an insurer to issue a card to its insured in compliance with its obligation under section 321.20B(2)($a$) without having first sold a policy to its insured that provides "financial liability coverage" as required by section 321.20B(1). Surely Grinnell Mutual does not believe that it could issue *any* type of coverage, provide its insured with a "proof of financial liability coverage card," and fulfill its statutory duty.

We hold that an insurer who provides liability coverage for a motor vehicle registered in this state must issue a policy to its insured that includes financial liability coverage as that term is defined in section 321.1(24A)($a$). Only by requiring the inclusion of such coverage will the legislative purpose implicit in section 321.20B(2)($a$) be accomplished. In other words, only in this way will the card issued to the insured by the insurance company serve as reliable proof of the existence of the required coverage.

■ Because chapter 321 requires that the liability coverage provided by Grinnell Mutual conform to the statutory definition of "financial liability coverage," "[t]he statute itself forms a basic part of the policy and is treated as if it had actually been written into the policy." *Tri–State Ins. Co.,* 379 N.W.2d at 17. Therefore, Grinnell Mutual was required to include, in its policy, liability coverage for "any person using an insured motor vehicle with the express or implied permission of the named insured ... in the amounts specified in section 321A.21 or specified in another provision of the Code, whichever is greater." Iowa Code § 321.1(24A)($a$). Because it did not, we read this requirement into the Grinnell Mutual policy.

Having determined the scope of liability coverage provided by the policy, we now examine the facts of this case to determine whether Lee falls within this coverage. There appears to be no dispute that Lee was a person *using* the Bergo vehicle. *See generally Van Zwol v. Branon,* 440 N.W.2d 589, 593 (Iowa 1989) (noting that term "use" is distinguishable from and broader than term "operate"); *cf. Grinnell Mut. Reinsurance Co. v. State Farm Mut. Auto. Ins. Co.,* 558 N.W.2d 176, 180 (Iowa 1997) (holding, in context of consent provision in policy, "use" refers to the use of the vehicle in general rather than its use

by the person seeking coverage). Therefore, provided Lee was using the car with the named insured's permission, she would qualify as an insured person under the liability coverage of the Grinnell Mutual policy. This coverage would, of course, be limited to that required by section 321.1(24A)(*a* ). *See* Iowa Code §§ 321.1(24A)(*a* ) (defining the required insurance to be at least in the amount "specified in section 321A.21"), 321A.21(2)(*b* ) (1997) (providing for minimum limits of $20,000 per person and $40,000 per accident); *Preferred Risk Mut. Ins. Co. v. Federated Mut. Ins. Co.*, 611 N.W.2d 283, 285–86 (Iowa 2000) (holding that where no waiver of uninsured motorist (UM) coverage for particular category of insured for which no UM coverage was provided, UM coverage in the minimum amount required by law would be read into the policy, despite higher limits expressly provided in the policy for other insureds).

Having concluded that Lee is afforded liability insurance under the Grinnell Mutual policy, provided her use was with Bergo's consent, we now consider whether Lee is likewise insured under the UIM coverage.

**C.** *Chapter 516A and UIM coverage.* As noted above, the Grinnell Mutual policy does not expressly include passengers or persons merely using the insured vehicle as insureds under the UIM coverage of the policy. Nonetheless, Lee argues that chapter 516A requires that such coverage be extended to her because she is insured under the liability provisions of the Grinnell Mutual policy, as supplemented by the requirements of chapter 321.

Iowa Code section 516A.1 provides in pertinent part:

No automobile liability ... insurance policy insuring against liability for bodily injury or death arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered ... in this state ..., unless coverage is provided ... *for the protection of persons insured under such policy* who are legally entitled to recover damages from the owner or operator of ... an underinsured motor vehicle because of bodily injury, sickness, or disease, including death resulting therefrom, caused by accident and arising out of the ownership, maintenance, or use of such ... underinsured motor vehicle....

Iowa Code § 516A.1 (1997) (emphasis added). This court has stated that "[t]he language of chapter 516A makes it clear that the statute was intended to protect persons insured under a *liability* policy." *Hornick v. Owners Ins. Co.*, 511 N.W.2d 370, 372 (Iowa 1993) (emphasis added). Accordingly, we have held that persons who are insured for liability purposes under a policy are entitled to the protection mandated by chapter 516A, i.e., UIM coverage, unless a valid exclusion from UIM coverage is present in the policy. *Id.* at 373; *Kats v. Am. Family Mut. Ins. Co.*, 490 N.W.2d 60, 62 (Iowa 1992); *accord Allied Mut. Ins. Co. v. Action Elec. Co.*, 256 Neb. 691, 593 N.W.2d 275, 279–80 (1999) (citing cases from other jurisdictions). Applying these principles here, we conclude chapter 516A requires that persons insured under the liability coverage of the Grinnell Mutual policy also be afforded coverage under the UIM provisions of the policy. *See Pappas v. Cent. Nat'l Ins. Grp.*, 400 Mich. 475, 255 N.W.2d 629, 631 (1977) (holding where UM statute required that persons insured under liability coverage also be insured under UM coverage, court would extend UM coverage to person insured under liability provisions despite exclusion of such person from UM definition of insured).

Grinnell Mutual attempts to avoid this consequence by characterizing its definition of "insured person" as an exclusion designed to avoid duplication of coverage. Iowa Code section 516A.2 permits an insurer to "include terms, exclusions, limitations, conditions, and offsets *which are designed to avoid duplication of insurance.*" Iowa Code § 516A.2(1) (emphasis added). This court has upheld policy provisions that deny UIM coverage to persons occupying an insured vehicle even where no actual duplication is shown, provided the policy provision was designed to avoid duplication. *See Miller v. Westfield Ins. Co.,* 606 N.W.2d 301, 306–07 (Iowa 2000). On the other hand, where the policy provision does not appear to be intended to avoid duplication of insurance, the limitation is unenforceable. *See Prudential Ins. Co. v. Martinson,* 589 N.W.2d 64, 66 (Iowa 1999); *Veach v. Farmers Ins. Co.,* 460 N.W.2d 845, 847 (Iowa 1990).

We do not think Grinnell Mutual's definition of "insured person" was designed to avoid duplication of insurance. The omission from UIM coverage of persons using the insured vehicle has no discernible connection to the duplication of coverage. Passengers may or may not own a vehicle and that vehicle may or may not be insured. In the cases where we have upheld exclusions there has been some logical nexus between the persons excluded and the potential for duplicate insurance. *E.g., Hornick,* 511 N.W.2d at 374 (upholding provision that extended UIM coverage only to relatives of named insured "who [do] *not* own a car" (emphasis added)); *Ciha v. Irons,* 509 N.W.2d 492, 494 (Iowa 1993) (upholding "owned-but-not-insured" exclusion that applied where insured was injured in another vehicle *owned by the insured* but not covered under the policy); *Kluiter v. State Farm Mut. Auto. Ins. Co.,* 417 N.W.2d 74, 76 (Iowa 1987) (also upholding "owned-but-not-insured" exclu-

sion); *cf. Martinson,* 589 N.W.2d at 66 (invalidating "not-owned-but-insured" exclusion that applied where insured was injured in a vehicle *not owned* by the insured and *not covered* under the insured's policy); *Veach,* 460 N.W.2d at 848 (invalidating "not-owned-but-insured" exclusion that applied where insured was injured in a vehicle *not owned* by the insured but covered under another policy). That nexus is lacking here and consequently the policy provision upon which Grinnell Mutual relies is not a term, limitation, or condition "designed to avoid duplication of insurance" within the meaning of section 516A.2(1). It cannot, therefore, operate to exclude persons otherwise insured under the liability provisions of the policy from coverage under the UIM provisions. Therefore, if Lee had permission to use the insured vehicle, she is insured under the Grinnell Mutual policy for damages she is legally entitled to recover from an underinsured motorist, subject to the same limits as the liability coverage extended to her pursuant to the requirements of section 321.1(24A)(*a*).

### IV. *Summary and Disposition.*

■ Iowa's financial liability coverage law requires that an insurer issuing an owner's policy of liability insurance providing coverage for a motor vehicle registered in this state must conform its liability coverage to the statutory definition of "financial liability coverage." As applied to the present case, this requirement of chapter 321 must be treated as if it had been written into the Grinnell Mutual policy. Thus, liability coverage under the policy must be extended, in the minimum statutory amount, to "any person using an insured motor vehicle with the express or implied permission of the named insured." Because Lee was using the Bergo vehicle insured by Grinnell Mutual at the time of

her injuries, she is covered under the liability provisions of the policy, provided this use was with the consent of Rex Bergo.

Chapter 516A requires that persons insured under the liability coverage of a policy be afforded UIM coverage under the policy. Although provisions designed to avoid duplication of insurance are permitted, the policy definition of "insured person" at issue here was not designed to avoid duplication of coverage. Therefore, this definition does not prevent UIM coverage, in the minimum statutory amount, from being extended to Lee as required by chapter 516A.

We hold that the district court erred in ruling as a matter of law that Lee was not an insured person under the Grinnell Mutual policy. Therefore, we reverse the summary judgment entered in favor of Grinnell Mutual and remand the case for trial on Lee's claim for UIM benefits.

**REVERSED AND REMANDED.**