Charzetta STEELE, Appellant,

v.

SHELTER MUTUAL INSURANCE
COMPANY, Respondent.

No. SC 92520.

Supreme Court of Missouri,
En Banc.

May 28, 2013.

David C. Knieriem, Law Offices of David C. Knieriem, Clayton, for Steele.

Michael S. Hamlin, Seth G. Gausnell, Pitzer Snodgrass PC, St. Louis, for Shelter.

LAURA DENVIR STITH, Judge.

Charzetta Steele appeals the trial court's grant of summary judgment against her on her claim that her young son, who was injured by an uninsured motorist while a passenger in his daycare provider's van, was an insured under the uninsured motorist provisions of the daycare provider's policy with Shelter Mutual Insurance Company. This Court affirms.

The policy defines "insured," as relevant here, to include owners, operators and other users who exercise physical control or the right of control of the vehicle. It does not include other passengers. This Court rejects Ms. Steele's argument that the uninsured motorist statute, section 379.203, RSMo.2000, requires coverage of all passengers within the definition of "user" and that this Court therefore should write such a provision into the policy as a matter of law. The uninsured motorist statute requires coverage only of those who are insureds under the liability policy. The policy itself does not cover all passengers, and the financial responsibility law, known as the MVFRL, section 303.010, RSMo.2000 et seq., requires it to provide coverage only to users of the vehicle to the extent that liability may be imposed on them under Missouri law for damages arising out of such use. Ms. Steele's son does not come within this required coverage, as his passive use of the van as a passenger did not provide a basis to impute liability on him. Accordingly, he is not an insured and the trial court's judgment is affirmed.

## I. FACTS

On November 3, 2009, a vehicle traveling at an excessive speed failed to yield and struck the rear end of Bright Start Academy's daycare van. The driver of the speeding vehicle was uninsured. Following the accident, Charzetta Steele, the mother of a child who was a passenger in the van, filed a petition on behalf of her son against Shelter Mutual Insurance Company ("Shelter"). She alleged that Shelter had issued an insurance policy to Bright Start Academy that covered the daycare van and included a provision for uninsured motorist coverage. Ms. Steele further alleged that her child was an "insured" under the policy, and she requested judgment in her favor to compensate for the serious injuries the child sustained in the accident.

Shelter filed a motion for summary judgment asserting that the child was not an "insured" under the policy because he was not the policyholder, a relative of the policyholder, listed on the policy, or "using" the vehicle at the time of the accident under the policy's definition of "user." Ms. Steele agreed that the policy did not cover her child and that he was not a "user" under it, but she argued that Missouri's MVFRL, read in conjunction with the uninsured motorist ("UM") law, section 379.203, RSMo.2000, requires that such

coverage be provided up to the $25,000 mandatory minimum limits for uninsured motorist coverage.

Following a hearing, the trial court granted judgment to Shelter. This Court granted transfer pursuant to art. V, sec. 10 of the Missouri Constitution after opinion by the court of appeals.

## II. STANDARD OF REVIEW

 The grant of summary judgment is an issue of law that this Court reviews *de novo. ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The Court reviews the record in the light most favorable to the party against whom judgment was entered, without deference to the trial court's findings, and accords the non-movant "the benefit of all reasonable inferences from the record." *Id.*

## III. ANALYSIS

 To determine whether a child who is riding as a passenger in a vehicle is entitled to UM benefits, this Court first turns to the policy to determine if it provides coverage. The UM provision of the policy states:

PART IV—COVERAGE E—UNINSURED MOTOR VEHICLE LIABILITY COVERAGE

INSURING AGREEMENT FOR COVERAGE E:

If an insured sustains bodily injury as a result of an accident involving the use of an uninsured motor vehicle and the owner or operator of the vehicle is legally obligated to pay some, or all, of the insured's resulting damages, we will pay the uncompensated damages, subject to the limit of our liability stated in this coverage.

DEFINITIONS USED IN PART IV

In Coverage E:

(1) Damages means . . .

(2) *Insured means a person included in one of the following categories, but only to the extent stated in that category.*

CATEGORY A:

(a) You;

(b) relatives; and

(c) individuals listed in the Declarations as an "additional listed insured" who do not own a motor vehicle, and whose spouse does not own a motor vehicle.

CATEGORY B:

*Any individual, not included in Category A, who is using the described auto with permission or general consent.* The limit of our liability for individuals in this category is the minimum limit of uninsured motorist insurance coverage specified by the uninsured motorist insurance law or financial responsibility law applicable to the accident, regardless of the limit stated in the Declarations.

(emphasis added). The general definitions section of the Shelter policy defines "use" as:

*Use means physically controlling, or attempting to physically control, the movements of a vehicle.* It includes any emergency repairs performed in the course of a trip, if those repairs are necessary to the continued use of the vehicle.

(emphasis added).

Neither party understands Ms. Steele's child to fall within the definition of an "insured," thereby entitling him to UM coverage under these policy definitions. That is because he was not an "insured" person under category A in that he was not the policyholder, a relative of the policyholder or an additional listed insured. He also was not an "insured" person under

category B because he does not come within the definition of what constitutes "use" of the vehicle under the liability policy.

■ As just quoted, the liability policy defines "use" to include only those persons "physically controlling, or attempting to physically control" the vehicle. Ms. Steele's child, while a passenger in the vehicle, was not operating or otherwise physically controlling or attempting to physically control it. This unambiguously means he was not a user of the van as the term "use" is defined in the policy, therefore, he was not an insured under the terms of the policy in and of themselves. When insurance contracts are unambiguous, they will be enforced as written absent a public policy to the contrary. *Krombach v. Mayflower Ins. Co., Ltd.*, 827 S.W.2d 208, 210 (Mo. banc 1992).

■ Ms. Steele suggests that public policy requires this Court to expand the definition of "use" as used in the liability provisions of the policy. She would have the Court write into the contract, as a matter of law, a broader definition that includes all vehicle passengers. In support, she says that the UM statute mandates such coverage. As she notes, it is against public policy to give effect to policy provisions that condition, limit or otherwise dilute insurance coverage mandated by statute. *See Shepherd v. American States Ins. Co.*, 671 S.W.2d 777 (Mo. banc 1984).

This Court, therefore, must determine whether Missouri UM or other statutes require all those who are passengers in motor vehicles to be considered users of the vehicles and, so, included within the definition of "insured," even when the policy itself provides otherwise. Missouri's UM statute states in relevant part:

1. *No automobile liability insurance* covering liability arising out of the own-ership, maintenance, or use of any motor vehicle shall be delivered or issued ... in this state *unless coverage is provided* therein or supplemental thereto, ... *for the protection of persons insured thereunder who are legally entitled to recover damages* from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom.

*§ 379.203.1, RSMo.2000* (emphasis added). This language unambiguously requires every automobile liability insurance policy to provide UM coverage for the protection of persons "insured thereunder"—that is, insured under the liability policy—who legally are entitled to recover damages from the uninsured vehicle owner or operator. So, if a person is insured under the liability policy on the vehicle, then that person also as a matter of law must receive UM coverage under the policy (at least equal to the minimum limits set out in Missouri statutes) if the person legally is entitled to recover damages from the person owning or operating the uninsured vehicle.

This begs the question whether the person seeking UM coverage is insured under the liability policy; if not, then section 379.203.1 by its terms does not require UM coverage. As discussed earlier, the liability policy at issue here provides liability coverage to users only if they are physically controlling or attempting to physically control the vehicle. As it is uncontested that Ms. Steele's son did not come within this provision, the policy considered on its face does not provide coverage to him.

But that does not end the Court's inquiry for, as Ms. Steele notes, if Missouri's statutes governing liability policies require a policy to provide liability coverage for passengers such as Ms. Steele's child who are riding passively in a vehicle, then such coverage provision will be written into the

policy as a matter of law. *See Stahlberg v. Travelers Indem. Co.*, 568 S.W.2d 79, 85 (Mo.App.1978) ("where parties contract upon a subject which is surrounded by statutory limitations and requirements, they are presumed to have entered into such contracts with reference to such statutes, and such provisions become part of the contract").

This Court turns to section 303.190, RSMo.2000, which sets out what liability coverage is required to be included in a policy, to see whether passengers are required to be insured in liability policies issued in Missouri. That section states, in relevant part:

1. A "motor vehicle liability policy" as said term is used in this chapter shall mean an owner's or an operator's policy of liability insurance, certified as provided in section 303.170 or section 303.180 as proof of financial responsibility, and issued, except as otherwise provided in section 303.180 by an insurance carrier duly authorized to transact business in this state, to or for the benefit of the person named therein as insured.

2. Such owner's policy of liability insurance: ...

(2) *Shall insure the person named therein and any other person, as insured, using any such motor vehicle* or motor vehicles with the express or implied permission of such named insured, *against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicle* or motor vehicles....

(emphasis added).

A careful reading of the highlighted language of section 303.190.2(2) makes it clear that those using a motor vehicle are required to be insured under a liability policy only "against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use" of the vehicle. *Id.*

■ The question remains whether and when the law imposes liability on a user for damages arising out of use of the vehicle. To the extent that this is the case, sections 303.190 and 379.203, RSMo.2000, read together, require that liability and UM coverage be provided at least to the statutory minimum level.

Negligent operation of a motor vehicle unquestionably is a use for which the law imposes liability. *See, e.g., Jarrett v. Jones*, 258 S.W.3d 442, 448 (Mo. banc 2008) (vehicle operators owed a duty to exercise the highest degree of care in operating their automobile, and a cause of action for personal injury can arise if this duty is breached).

■ A passenger can be held liable for negligent operation of a vehicle also, but only when the passenger demonstrates a "realistic right of control" of the vehicle. *Bach v. Winfield–Foley Fire Prot. Dist.*, 257 S.W.3d 605 (Mo. banc 2008). In *Bach*, a driver and owner-passenger were involved in an automobile accident when the driver rear-ended a fire truck. In response to the owner-passenger's suit against the fire protection district, the district argued that the owner and driver had an agency relationship such that the driver's negligence could be imputed to the owner. This Court found that, "to establish a principal/agent relationship between [owner] and [driver], the principal must have a 'right to control' the agent." *Id.* at 608. Although the owner did not control every physical movement of the driver while he was driving her automobile, "she did have the right to control, and did so, by directing when the trip occurred and the ends of his activities—the destination of the trip." *Id.* at 610.

This Court recently reaffirmed *Bach's* limitation of the liability of passengers only to those who exercise a realistic right to control over the vehicle in *State ex rel. Henley v. Bickel*, 285 S.W.3d 327, 330 (Mo. banc 2009). In *Henley*, motorists brought a negligence action against the passenger in a vehicle with which they collided under the theory of joint venture. This Court held that the "realistic right of control" test "requires a practical showing of an actual ability to control the driver, beyond a showing of theoretical right of control over the vehicle via ownership." *Id.* at 332. Because the passenger merely was alleged to be sitting passively in the vehicle but was not shown to have a realistic right of control over it, *Henley* held the passenger could not be held liable to those injured in the collision. *Id.*

In the present case, Ms. Steele does not suggest that her young child had a realistic right of control over the daycare van. His use of a vehicle as a mere passenger, therefore, could not result in "liability imposed by law for damages." For this reason, the MVFRL does not require that a provision insuring him be read into the liability policy as a matter of law.

■ Of course, an insurer is free to provide broader coverage that applies to all passengers; Missouri law simply does not mandate that such UM coverage be provided. Whether UM coverage exists must be determined by reference to the policy provisions themselves. And, when the policy does not define "use" or "user," then any ambiguity in the meaning of the term will be interpreted in favor of coverage. *Cf. Francis–Newell v. Prudential Ins. Co. of Am.*, 841 S.W.2d 812 (Mo.App.

1992) (interpreting "using" vehicle as used in policy to include passenger merely riding in vehicle for UM coverage purposes).

Here, however, the policy language is explicit. It states that "[if] an insured sustains bodily injury as a result of an accident" with an uninsured driver, Shelter will pay the uncompensated damages, subject to the coverage's limit of liability.[1] An "insured" is defined by the policy as either the policyholder, relatives of the policyholder, "additional listed" insureds, or those "using" the vehicle with express or implied permission. Unlike in the other cases cited or previously decided in Missouri, the policy then expressly defines "use" as "physically controlling, or attempting to physically control, the movements of a vehicle."

The policy's definition of "use" is not alleged here to be inconsistent with the "realistic right of control" test adopted by this Court for determining passenger liability, nor is it alleged that the child here had control or attempted control of the vehicle. Section 379.203 and the MVFRL do not mandate that insurance polices provide UM coverage for Ms. Steele's child, and Shelter's policy indisputably did not extend UM coverage to him.

Ms. Steele argues that this interpretation of the statute is inconsistent with public policy and that this Court should extend coverage to all passengers, as all passengers injured in an accident could have recovered from the negligent driver had he or she been insured. *See Francis–Newell, supra.* While this Court agrees that the policy concerns behind the UM statute would support allowing recovery to the full breadth argued for by Ms. Steele, it has no

---

**1.** Neither party questions that the Shelter policy's limit of liability complies with the MVFRL. The statute requires as follows: "twenty-five thousand dollars because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, fifty thousand dollars because of bodily injury to or death of two or more persons in any one accident, and ten thousand dollars because of injury to or destruction of property of others in any one accident." § 303.190.2, RSMo.2000.

authority to expand mandatory coverage to include persons for whom coverage is not actually mandated.[2]

Here, the UM and MVFRL statutes actually enacted are narrower than Ms. Steele argues would be best. They do not require UM coverage for the protection of persons who legally would be entitled to recover damages from a tortfeasor if the tortfeasor were known and insured. Rather, the UM statute, section 379.203, requires UM coverage to be provided by a policy only "for the protection of persons *insured thereunder* who are legally entitled to recover damages" (emphasis added). The UM statute thereby measures what UM coverage must be provided by reference to who is required to be included in liability coverage under the policy terms and the MVFRL, rather than by reference to whether the person would have been entitled to recover from the uninsured motorist. This Court is not free to broaden that coverage; that matter is for the legislature. For the reasons just noted, UM coverage in this instance is not required for a passenger who does not have the realistic opportunity for control of the vehicle.

In support of her contrary position, Ms. Steele also cites to *Lee v. Grinnell Mut. Reinsurance Co.*, 646 N.W.2d 403 (Iowa 2002). *Lee* merely held that UM coverage must be provided when there is liability coverage and then held that, because there is liability coverage for users, this means all passengers are covered. The policy did not appear to define "user" and the court simply appears to have presumed, without discussion, that all passengers are using the vehicle. This case is not controlling here, in which a narrower definition of "user" is provided for by the policy, consistent with the statute.[3]

Moreover, *Lee* is inconsistent with this state's pre-MVFRL cases interpreting the meaning of "user" under the common law in a policy that does not define it. As there was no statutory mandate, those cases looked at the insurance policy terms and the common law to determine who was an insured and, therefore, entitled to UM coverage. For example, in *Waltz v. Cameron Mut. Ins. Co.*, 526 S.W.2d 340, 344 (Mo.App.1975), a passenger sought to recover damages under the uninsured motorist provision of an insurance policy issued

**2.** To the extent that *Francis–Newell* can be read to state that UM coverage is required to apply to persons other than those insured under the policy, even when the policy defines "user" expressly to exclude them, it is inconsistent with the statutory language and no longer should be followed. Similarly, to the extent that *Byers v. Shelter Mutual Ins. Co.*, 271 S.W.3d 39 (Mo.App.2008), could be read to hold that the UM statute applies to persons not insured under the driver's liability policy, it is inconsistent with this opinion. In *Byers*, the basis of liability was the negligence of the operator, not of an uninsured motorist, and the passenger could recover due to the operator's negligence, not because the passenger was a user of the vehicle.

**3.** The two other cases cited by Ms. Steele are even less relevant. *First Sec. Bank of Searcy v. Doe*, 297 Ark. 254, 760 S.W.2d 863, 864

(1988), simply addressed whether UM coverage had to be provided to an employee operating a vehicle on behalf of a corporation when the corporation is the named insured. *Kaysen v. Fed. Ins. Co.*, 268 N.W.2d 920, 925 (Minn.1978), held that its state's statutes required UM coverage for all persons insured under any "plan of reparation security" and then turned to the *employer's* "plan of reparation security" to determine whether the employee and his wife, who were injured in a hit-and-run accident after leaving the covered vehicle, were included in the terms of the plan of reparation security. It did not interpret a law similar to section 303.190. Far from holding that all passengers are "insureds" under vehicle UM provisions, it held that a mere passenger not included in the employer's reparation security provisions would not be covered. *Id.* at 925.

to the vehicle's owner. At issue in this pre-MVFRL case was whether the liability portion of the policy included passengers within the meaning of the word "user" when the term was not defined in the policy. *Waltz* held that it did not. It held that to be an "insured" under an insurance policy, the use of the vehicle must provide a basis for liability. It concluded that there was "nothing with which liability could be fastened on the plaintiff" because, as a passenger, she did not engage in "some form of control over the operation of the automobile" or "some active negligence." *Id.* at 344. Therefore, the passenger was not included as a user or insured in the policy.[4] *Accord, Pope v. Stolts*, 712 S.W.2d 434, 437 (Mo.App.1986) (*Waltz* holds that the term "use" requires some "supervisory control or guidance of a vehicle's movements").

Ms. Steele's son was not a user of the vehicle under the policy or under relevant Missouri statutes.

### IV. CONCLUSION

Section 379.203 mandates that UM coverage extend to all those who are insureds under liability policies. Ms. Steele's child is not included in the definition of "insured" under the policy itself. The MVFRL implies coverage as a matter of law in a policy for owners, operators and users to the extent that liability may be imposed on them under Missouri law for damages arising out of such ownership, operation or use. Users are liable only if they are an owner or their use gives them a realistic right of control of the vehicle. Ms. Steele's young child is not alleged to have had control or a realistic right of control of the vehicle. Consequently, summary judgment in favor of Shelter was proper. The trial court's judgment is affirmed.

TEITELMAN, C.J., RUSSELL, BRECKENRIDGE and FISCHER, JJ., concur.

DRAPER and WILSON, JJ., not participating.

---

**4.** A review of cases in other states interpreting "user" reveals, similarly, that almost all simply try to determine what the word "use" or "user" means in a policy that fails to define the word. Some hold that it includes all passengers, while others hold that it includes only those controlling or attempting to control the vehicle, but none of the cases seem to consider whether coverage of passive passengers is required by their state statutes requiring minimum liability and UM coverage when there is a policy definition that excludes such passengers, as is the case here. *See, e.g., Radil v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 207 P.3d 849, 856 (Colo.Ct.App. 2008); *Estate of Sullivan v. Allstate Ins. Co.*, 841 N.E.2d 1220, 1223 (Ind.App.2006); *Am. States Ins. Co. v. Farm Bureau Ins. Co. of Nebraska*, 7 Neb.App. 507, 583 N.W.2d 358, 363 (1998); *Whitcomb v. Peerless Ins. Co.* 141 N.H. 149, 679 A.2d 575, 577 (1996).

The only case that appears to address a policy defining "use" is supportive of this Court's decision. In *Galloway v. Vaughn*, 2011 WL 345960 (Tenn.Ct.App. Feb. 2, 2011), a passenger in a vehicle involved in an accident filed an action to recover UM benefits. As in Missouri, Tennessee statutes required insurance carriers to offer UM coverage to "persons insured under the policy." The policy at issue did not cover passengers, but the plaintiff passenger argued that the definition of "user" in the Tennessee statutes should be read more broadly, superseding the insurance policy. *Id.* at *3. The court rejected this argument, concluding that the UM statute only requires insurance carriers to provide UM coverage to persons insured under the liability policy. *Id.* Although the court made no reference to Tennessee statutes similar to the MVFRL, to the extent that the court held that the limits of UM coverage depend on who is an "insured" under a policy, the decision is consistent with the holding here.