

## SUPREME COURT OF MISSOURI
### en banc

| | | |
|---|---|---|
| SANFORD SACHTLEBEN and LUCIANN HRUZA, | ) ) ) | *Opinion issued April 30, 2024* |
| Appellants, | ) ) | |
| v. | ) | No. SC100238 |
| | ) | |
| ALLIANT NATIONAL TITLE INSURANCE CO., | ) ) ) | |
| | ) | |
| Respondent. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF ST. LOUIS COUNTY
The Honorable Joseph S. Dueker, Judge

Sanford Sachtleben and Luciann Hruza ("Buyers") appeal a judgment for Alliant National Title Insurance Co. ("Alliant") on its motion for partial summary judgment. Because the circuit court correctly concluded the unambiguous language of the title insurance policy (the "policy") provides no coverage to Buyers, this Court affirms the circuit court's judgment.

### Factual Background and Procedural History

On September 28, 2016, Buyers purchased approximately 20 acres of land unimproved except for a barn in New Melle, St. Charles County, Missouri (the "property") from Perry and Joanie Sullivan ("Sellers").

On August 29, 2016, before Sellers sold the property to Buyers, New Melle sued Sellers in St. Charles County circuit court ("New Melle lawsuit"). New Melle alleged the property is in an "R-1A Single Family Residential Zone District" and that the barn Sellers constructed on the property after Sellers received an accessory building permit from New Melle in November 2015 violated city zoning ordinances because in May 2016 Sellers had requested a refund of the fee for the single-family building permit issued to them in March 2016, which indicated, according to New Melle, Sellers did not wish to build a single-family dwelling on the property. New Melle asked the circuit court to enjoin Sellers from entering and using the barn except during the construction of a principal single-family dwelling with a proper permit or to order the barn demolished for violating city ordinances. In October 2016, New Melle added Buyers as defendants in the New Melle lawsuit based on Buyers' new ownership of the property. New Melle alleged Buyers had not applied for a permit for a principal building. Buyers demanded Alliant provide coverage under the policy, but Alliant refused.

Before closing, Buyers engaged Investors Title Company ("ITC"), an insurance broker, to buy the policy from Alliant. ITC prepared a title commitment for Alliant identifying the New Melle lawsuit as a potential "special exception" from coverage, stating: "We find of record a pending suit # 1611-CC00794 by and between The City of New Melle, Plaintiff[,] and [Sellers,] Defendants, the outcome of which may affect the subject."[1] Buyers allege they were not provided a copy of the title commitment or

---

[1] Buyers raised the title commitment in their statement of additional material facts in response to Alliant's motion for summary judgment. Alliant objected to the title

2

otherwise informed by ITC, Alliant, or Sellers about the New Melle lawsuit. On September 30, 2016, Alliant issued the policy to Buyers with a "Date of Policy" of September 30, 2016. The policy is a standard form American Land Title Association ("ALTA") policy. The policy does not mention, identify, or reference the New Melle lawsuit.

The parties do not dispute that, as of September 30, 2016, St. Charles County's land records included no document that (1) described any portion of the property and (2) stated either that an ordinance violation existed at the property or that New Melle intended to enforce any ordinance violation against the property. Buyers allege they did not know about the New Melle lawsuit until October 19, 2016, when they were added as defendants.

On March 25, 2021, the circuit court entered judgment in the New Melle lawsuit. The circuit court found in New Melle's favor, enjoined Buyers from entering or using the barn except during construction of a principal single-family dwelling with a proper permit, and ordered the barn demolished within 180 days of the date of judgment unless Buyers had rezoned the property or started construction on the property with a proper permit.

---

commitment on the basis that Buyers' response contained no factual assertions identifying the title commitment purportedly signed by an officer or agent of ITC. This Court will assume the title commitment is part of the summary judgment record because the circuit court did not strike the title commitment or otherwise indicate it would not consider the title commitment.

On May 13, 2021, Buyers sued in St. Louis County circuit court, asserting Alliant breached the policy by refusing to defend the New Melle lawsuit. Buyers sued Alliant, ITC, and a realtor individually and as a principal of a limited liability company. On the same date, Buyers sued Sellers, New Melle, and others in a separate case.

Alliant moved for summary judgment on the only claim against it, Count VI, asserting no provision of the policy provides coverage to Buyers. The circuit court granted Alliant's motion, concluding the unambiguous policy provides no coverage for Buyers.[2] Buyers timely appealed. This Court granted transfer after an opinion by the court of appeals. Mo. Const. art. V, sec. 10.

Under the policy, Alliant agreed to insure Buyers, subject to the Exclusions from Coverage, the Exceptions from Coverage in Schedule B, and the Conditions, "against loss or damage . . . sustained or incurred by [Buyers] by reason of" certain "Covered Risks," including Covered Risks 2, 3, and 5, which Buyers assert provide coverage related to the New Melle lawsuit:

> 2. Any defect in or lien or encumbrance on the Title. This Covered Risk includes but is not limited to insurance against loss from

---

[2] Alliant moved for, and the circuit court granted, partial summary judgment in Alliant's favor. The circuit court determined: "This Partial Summary Judgment is final and appealable pursuant to [Rule] 74.01(b) and there is no just reason for delay." The circuit court did not abuse its discretion in finding the partial summary judgment final for purposes of appeal under Rule 74.01(b) because the partial summary judgment resolved a "judicial unit" of all claims between Buyers and Alliant. *See Wilson v. City of St. Louis*, 600 S.W.3d 763, 769 (Mo. banc 2020) (observing a judgment is final if it "resolves all of the claims in a lawsuit from the point of view of at least one party, even though other claims by or against other parties remain to be resolved"). All statutory references are to RSMo 2016, and all rule references are to Missouri Court Rules (2022).

(a) A defect in the Title caused by
(i) forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;

. . . .

(vi) a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law[.]

. . . .

3.  Unmarketable Title.

. . . .

5.  The violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
(a) the occupancy, use, or enjoyment of the Land;
(b) the character, dimensions, or location of any improvement erected on the Land;
(c) the subdivision of land; or
(d) environmental protection
if a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice.

Additionally, in "Exclusions from Coverage," Alliant "expressly excluded from the coverage of this policy":

1.  (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
(i) the occupancy, use, or enjoyment of the Land;
(ii) the character, dimensions, or location of any improvement erected on the Land;
(iii) the subdivision of land; or
(iv) environmental protection;
or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

In paragraph 1 of "Conditions," Alliant defined multiple terms used in the policy:

5

(f) "Knowledge" or "Known": Actual knowledge, not constructive knowledge or notice that may be imputed to an Insured by reason of the Public Records or any other records that impart constructive notice of matters affecting the Title.

(g) "Land": The land described in Schedule A, and affixed improvements that by law constitute real property. The term "Land" does not include any property beyond the lines of the area described in Schedule A, nor any right, title, interest, estate, or easement in abutting streets, roads, avenues, alleys, lanes, ways, or waterways, but this does not modify or limit the extent that a right of access to and from the Land is insured by this policy.

. . . .

(i) "Public Records": Records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge. With respect to Covered Risk 5(d), "Public Records" shall also include environmental protection liens filed in the records of the clerk of the United States District Court for the district where the Land is located.

(j) "Title": The estate or interest described in Schedule A.

(k) "Unmarketable Title": Title affected by an alleged or apparent matter that would permit a prospective purchaser or lessee of the Title or lender on the Title to be released from the obligation to purchase, lease, or lend if there is a contractual condition requiring the delivery of marketable title.

Buyers raise six points on appeal and ask this Court to vacate the circuit court's judgment for Alliant and remand the case for further proceedings.

## Standard of Review

This Court reviews a circuit court's grant of summary judgment *de novo*. *Green v. Fotoohighiam*, 606 S.W.3d 113, 115 (Mo. banc 2020). "In reviewing the decision to grant summary judgment, this Court applies the same criteria as the trial court in determining whether summary judgment was proper." *Id.* (internal quotation omitted). Summary judgment is proper if the moving party establishes there is no genuine issue as

6

to the material facts and the movant is entitled to judgment as a matter of law. *Id.* "The record below is reviewed in the light most favorable to the party against whom summary judgment was entered, and that party is entitled to the benefit of all reasonable inferences from the record." *Id.* at 116. "Summary judgment is frequently used in the context of insurance coverage questions." *Bland v. Progressive Cas. Ins. Co.*, 665 S.W.3d 424, 428 (Mo. App. 2023) (internal quotation omitted).

**Analysis**

"The interpretation of an insurance policy is a question of law that this Court also determines *de novo*." *Seaton v. Shelter Mut. Ins. Co.*, 574 S.W.3d 245, 247 (Mo. banc 2019) (internal quotation omitted). "When interpreting an insurance policy, this Court gives the policy language its plain meaning, or the meaning that would be attached by an ordinary purchaser of insurance." *Id.* (internal quotation omitted). "Definitions, exclusions, conditions and endorsements are necessary provisions in insurance policies." *Id.* (internal quotation omitted). "A policy must be enforced as written when its language is clear and unambiguous." *Id.* "An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy." *Id.* (internal quotation omitted). "Courts may not unreasonably distort the language of a policy or exercise inventive powers for the purpose of creating an ambiguity when none exists." *Todd v. Mo. United Sch. Ins. Council*, 223 S.W.3d 156, 163 (Mo. banc 2007). "Insurance policies are read as a whole, and the risk insured against is made up of both the general insuring agreement as well as the exclusions and definitions." *Owners Ins. Co. v. Craig*, 514 S.W.3d 614, 617 (Mo. banc 2017) (internal quotation omitted).

7

**Point One – Covered Risk 5 Does Not Provide Coverage Based on Alliant's Actual Knowledge of the New Melle Lawsuit**

In point one, Buyers argue Covered Risk 5 provides coverage because: (1) Alliant had actual knowledge of the New Melle lawsuit before the Date of Policy from the title commitment Alliant received from ITC; (2) the New Melle lawsuit alleges violation of New Melle zoning ordinances, and those ordinance violations and the New Melle lawsuit itself affected "occupancy, use, or enjoyment of the Land" and "character, dimensions, or location of any improvement erected on the Land" because the New Melle lawsuit requested restriction on use of the barn and demolition of the barn; and (3) Covered Risk 5 does not state actual notice falls outside of the scope of coverage obligations and Alliant bore the burden to clearly and precisely so state if it did not wish to provide coverage for all defects of which it had actual notice. Buyers argue their interpretation of Covered Risk 5 is supported by the policy definition of "Public Records," which refers to records "imparting constructive notice" to those "without Knowledge," which is defined to include actual knowledge. According to Buyers, to find no coverage under Covered Risk 5 in this circumstance "creates the absurd loophole that a title company does not have to cover issues it knows about just because a notice is not properly recorded with a recorder of deeds[.]" Buyers also assert public policy supports a finding of coverage under Covered Risk 5 based on Alliant's actual notice of the New Melle lawsuit.

This Court is bound to enforce the policy as written. *Seaton*, 574 S.W.3d at 247. This Court "may not unreasonably distort the language of a policy or exercise inventive powers for the purpose of creating an ambiguity when none exists." *Todd*, 223 S.W.3d at

8

163. The plain language of Covered Risk 5 provides coverage "if a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice." Alliant explicitly stated in Covered Risk 5 that a recorded notice is required for coverage. Alliant did not have to set out in Covered Risk 5 every scenario in which it would not provide coverage; instead, it had to set out in Covered Risk 5 the requirements for coverage under that provision. Alliant unambiguously did so and clearly provided a recorded notice is required for coverage. Without recorded notice, Covered Risk 5 does not provide coverage, and Exclusion 1(a) excludes any ordinance violation relating to an improvement on the land. While Buyers and Alliant could have entered into a contract providing for coverage of all ordinance violations, defects, encumbrances, or encroachments of which Alliant had actual notice before the Date of Policy, they did not do so and may have had legitimate reasons for choosing not to do so, such as cost or the certainty stemming from a bright-line rule based on recorded notice. If this Court were to conclude Alliant had to defend against unrecorded lawsuits of which it had actual knowledge, this Court impermissibly would disregard its standard of review and rewrite the plain language of Covered Risk 5.[3]

---

[3] This Court's interpretation of Covered Risk 5 is consistent with other courts' construction of identical policy language. *See, e.g.*, *BV Jordanelle, LLC v. Old Republic Nat'l Title Ins. Co.*, 830 F.3d 1195, 1206 (10th Cir. 2016) (interpreting the same policy language and finding no coverage because the insured did not allege facts showing a recorded notice of intention to enforce an ordinance); *Fawn Second Ave. LLC v. First Am. Title Ins. Co.*, 610 F. Supp. 3d 621, 632 (S.D.N.Y. 2022) (interpreting the same policy language, finding "Covered Risk 5 is triggered only insofar as a notice of a legal violation or intent to enforce a law is recorded in the real property records" and

9

Buyers' argument that public policy supports construing Covered Risk 5 to provide coverage based on Alliant's actual knowledge of the New Melle lawsuit is unavailing. "When insurance contracts are unambiguous, they will be enforced as written absent a public policy to the contrary." *Steele v. Shelter Mut. Ins. Co.*, 400 S.W.3d 295, 298 (Mo. banc 2013). "[I]t is against public policy to give effect to policy provisions that condition, limit or otherwise dilute insurance coverage mandated by statute." *Id.* Buyers cite no statute mandating coverage for all violations, defects, or encumbrances of which title insurers have actual notice before an effective date of a title policy. If a statute or public policy expressed in a statute does not require coverage, this Court enforces the unambiguous policy as written and may not rely on general notions of public policy to require coverage not required by the policy or by Missouri law. *Id.* at 300-01 (observing, while "the policy concerns behind the [uninsured motorist] statute would support allowing recovery[,]" the Court "has no authority to expand mandatory coverage to include persons for whom coverage is not actually mandated"); *see also Cameron Mut. Ins. Co. v. Madden*, 533 S.W.2d 538, 545 (Mo. banc 1976) ("[N]o statute requires the inclusion of medical payment coverage in an automobile policy. Consequently, we are concerned with interpreting and giving effect to provisions of the insurance contract, not

_____

concluding there was no coverage under Covered Risk 5 because a landmark designation notice was not recorded until after the date of the policy); *First Am. Title Ins. Co. v. McGonigle*, No. 10-1273-MLB, 2013 WL 1087353, at \*4 (D. Kan. Mar. 14, 2013) (finding the same policy language did not cover an unrecorded alleged violation of Kansas law because "[t]he policy clearly states that a notice must be recorded in the public records in order for the risk to be covered under the policy"). Buyers do not identify any authority construing the same policy language as they read it, and this Court finds none.

10

public policy considerations."). Because no statute requires coverage under these circumstances, the Court must enforce the unambiguous policy.

### Point Two – Covered Risk 5 Does Not Provide Coverage Because the New Melle Lawsuit Was Not Recorded in the Public Records

In point two, Buyers argue Covered Risk 5 provides coverage because the policy definition of "Public Records" is ambiguous and must be construed in favor of providing coverage. Buyers allege, because "Public Records" does not mention a recorder of deeds or define "Public Records" as only documents filed of record with a recorder of deeds, an ambiguity exists and "Public Records" must include court records, including the New Melle lawsuit of which Alliant had actual notice from the title commitment prepared by ITC. The policy defines "Public Records" as "Records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge."

The policy's unambiguous definition of "Public Records" limits public records to those established by statute to impart constructive notice to purchasers of real property.[4] Buyers cite no Missouri statute providing lawsuits generally or court records generally impart constructive notice to purchasers of real property. Regarding pending lawsuits,

---

[4] One example is section 442.390, which states written instruments certified and recorded in the manner provided by statute with a recorder of deeds "impart notice to all persons of the contents thereof and all subsequent purchasers and mortgagees shall be deemed, in law and equity, to purchase with notice." Chapter 381, RSMo, concerns title insurance law, and the policy's definition is almost identical to the definition of "search of the public records" in section 381.085.1 as "a search of those records established by the laws of this state for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge."

section 527.260 provides, "In any civil action, based on any equitable right, claim or lien, affecting or designed to affect real estate," a "plaintiff shall file for record, with the recorder of deeds of the county in which any such real estate is situated, a written notice of the pendency of the suit" containing certain information specified in the statute and "the pendency of such suit shall be constructive notice to purchasers or encumbrancers, only from the time of filing such notice." This notice is called a lis pendens. Buyers do not dispute New Melle did not record a lis pendens identifying the New Melle lawsuit. Additionally, section 511.350.1 provides, with certain exceptions not relevant here, "judgments … shall be liens on the real estate of the person against whom they are entered, situate in the county for which or in which the court is held." *See also Knutson v. Christeson*, 684 S.W.2d 549, 552 (Mo. App. 1984) ("[W]here a statute provides that a judgment shall create and establish a lien on the real property of the judgment debtor, the judgment imparts notice of such lien."). Buyers do not dispute there was no judgment in the New Melle lawsuit as of the effective policy date. Sections 527.260 and 511.350.1 provide specific circumstances under which pending lawsuits and judgments impart constructive notice to purchasers; those statutes do not provide that court records generally or lawsuits generally provide constructive notice to purchasers of real property.

The definition of "Public Records" in the policy is unambiguous. Because no Missouri statute states that court records generally or lawsuits generally provide constructive notice to purchasers of real property, court records generally or lawsuits generally are not "Public Records" under the policy. *See First Am. Title Ins. Co. v. Birdsong*, 31 S.W.3d 531, 536 (Mo. App. 2000) (declining to find a non-final "inchoate"

12

original judgment entry satisfied the requirements of section 511.350.1); *Dave Robbins Constr., LLC v. First Am. Title Co.*, 249 P.3d 625, 629 (Wash. Ct. App. 2010) (interpreting the same definition of public records to include only notices under statutes intended to provide constructive notice to potential purchasers of real property and rejecting interpretation encompassing "all records on file with all governmental agencies").

### Points Three Through Six – Exclusion 1(a) Precludes Coverage Under Covered Risks 2 and 3

In points three, five, and six, Buyers argue Covered Risk 2 provides coverage. In point three, Buyers assert the ordinance violations and the New Melle lawsuit are "[a]ny defect in or lien or encumbrance on the Title[,]" triggering coverage under Covered Risk 2. In point five, Buyers claim there is coverage under Covered Risk 2(a)(i) for "[a] defect in the Title caused by (i) forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation" because Buyers alleged fraudulent conduct by Sellers, Sellers' real estate agent, and the parties' real estate dual agent in intentionally hiding the New Melle lawsuit from Buyers. In point six, Buyers assert there is coverage under Covered Risk 2(a)(vi) for "[a] defect in the Title caused by … a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law[.]" Buyers argue section 527.260 obligated New Melle to record a lis pendens related to the New Melle lawsuit and Buyers' damages from the city's failure to do so are covered under Covered Risk 2(a)(vi).

In point four, Buyers contend Covered Risk 3 provides coverage because Buyers received "Unmarketable Title" as explicitly covered by Covered Risk 3. The policy defines "Unmarketable Title" as "Title affected by an alleged or apparent matter that would permit a prospective purchaser or lessee of the Title or lender on the Title to be released from the obligation to purchase, lease, or lend if there is a contractual condition requiring the delivery of marketable title." Buyers assert the ordinance violations and the New Melle lawsuit caused Buyers to receive "Unmarketable Title" from Sellers.

Buyers' arguments in points three through six fail because Exclusion 1(a) of the Policy precludes coverage under Covered Risks 2 and 3. Exclusion 1(a) states:

> The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:
> 1. (a) Any law, **ordinance**, permit, or governmental regulation (including those relating to building and zoning) **restricting, regulating, prohibiting, or relating to**
> (i) the occupancy, **use**, or enjoyment of the Land;
> (ii) **the character, dimensions, or location of any improvement erected on the Land**;
> (iii) the subdivision of land; or
> (iv) environmental protection;
> or the effect of any violation of these laws, ordinances, or governmental regulations. **This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5**.

(Emphasis added).

In other words, Exclusion 1(a) – which seems almost to have been written with Buyers' claims in mind – expressly excludes coverage for such claims unless they meet the requirements of Covered Risk 5. For the reasons set out in discussing Buyers' points one and two, the requirements of Covered Risk 5 are not met. Even if Buyers were

14

correct that there is coverage under Covered Risks 2 and 3, Exclusion 1(a) still applies and precludes coverage because the requirements of Covered Risk 5 are not met. *See, e.g.*, *Fawn*, 610 F. Supp. 3d at 634 n.7 (construing identical Covered Risks 2 and 5 and Exclusion 1(a) and concluding "even if the landmark designation impacted Plaintiffs' title to the Property — which it does not — Exclusion 1(a) would still bar coverage for the losses related to the LPC's exercise of regulatory power."). Construing the unambiguous policy as written, Exclusion 1(a) applies and defeats Buyers' argument concerning coverage under Covered Risks 2 and 3.[5]

## Conclusion

The circuit court did not err in entering partial summary judgment for Alliant on Count VI of Buyers' petition. This Court affirms the circuit court's judgment.

_____
Ginger K. Gooch, Judge

All concur.

---

[5] Buyers also assert the circuit court improperly granted summary judgment because Alliant's motion for summary judgment was limited to Covered Risk 5. But Alliant sought summary judgment on Buyers' only claim against Alliant, Count VI, and asserted "Alliant is entitled to judgment as a matter of law based on the undisputed fact that [Buyers] seek damages based on coverage that does not exist." Buyers raised in their summary judgment response the same arguments they raise on appeal about the applicability of Covered Risks 2 and 3, and the circuit court concluded in its judgment "the language of the insurance contract, including but not limited to, the 'Covered Risk 5' section, is unambiguous." The circuit court necessarily rejected these arguments in granting summary judgment in favor of Alliant. Further, this Court "will affirm if summary judgment was appropriate on any basis supported by the record." *Wilson v. City of St. Louis*, 662 S.W.3d 749, 754 (Mo. banc 2023).