# IN THE SUPREME COURT OF IOWA

No. 23 / 06–1094

Filed May 16, 2008

**SCOTT E. THOMAS** and **RHONDA R. THOMAS**,

Appellees,

vs.

**PROGRESSIVE CASUALTY INSURANCE COMPANY**,

Appellant.

Appeal from the Iowa District Court for Pottawattamie County, Greg W. Steensland, Judge.

Insurer appeals from summary judgment ruling determining underinsured motorist coverage applied to excluded driver's damage claim. **REVERSED AND REMANDED.**

Steven T. Durick and Joseph M. Barron of Peddicord, Wharton, Spencer, Hook, Barron & Wegman, LLP, Des Moines, for appellant.

Anthony W. Tauke of Porter, Tauke & Ebke, Council Bluffs, for appellees.

**TERNUS, Chief Justice.**

The appellant, Progressive Casualty Insurance Company, claims it provides no coverage under an insurance policy issued to appellee Rhonda R. Thomas for damages sustained by her husband, appellee Scott E. Thomas, in an accident with an underinsured motorist. Progressive relies on a named driver exclusion that listed Scott as an excluded driver. The district court granted the plaintiffs' motion for summary judgment on the coverage issue, concluding the exclusion did not apply to the underinsured motorist coverage of the policy. We disagree and therefore reverse the district court's ruling and remand for entry of judgment in favor of the defendant on Scott's claim.

## I. Background Facts and Proceedings.

In 2004 Rhonda Thomas purchased an automobile liability insurance policy from Progressive. While this policy was in effect, her husband, Scott, was driving the insured vehicle when he was involved in an accident. Scott was injured, and the insurer of the other driver paid its policy limits to Scott. The Thomases, believing their damages exceeded their recovery from the other driver, sought payment from Progressive under the underinsured motorist (UIM) coverage of Rhonda's policy. Progressive denied coverage for Scott's claim because Scott was listed on a named driver exclusion that excluded coverage for any claim arising from Scott's operation of a motor vehicle.

The Thomases then filed this suit, seeking UIM benefits under the Progressive policy. In its answer, Progressive asserted it had no coverage for Scott's damages due to the named driver exclusion. Both parties filed motions for summary judgment on the coverage issue. The district court determined the named driver exclusion did not apply to the underinsured motorist coverage of the policy, but refused to rule the

plaintiffs were entitled to recover under the policy as a matter of law because there was a genuine issue of material fact as to the degree of Scott's comparative fault and his damages.[1]   Progressive filed an application for interlocutory appeal, which this court granted.[2]

## II.  Scope of Review.

Summary judgment rulings are reviewed for correction of errors of law.  *Lee v. Grinnell Mut. Reins. Co.*, 646 N.W.2d 403, 406 (Iowa 2002). "To obtain a grant of summary judgment on some issue in an action, the moving party must affirmatively establish the existence of undisputed facts entitling that party to a particular result under controlling law." *Interstate Power Co. v. Ins. Co. of N. Am.*, 603 N.W.2d 751, 756 (Iowa 1999).

## III.  Governing Legal Principles.

In the present case, the pertinent facts are undisputed.   The disagreement centers on the proper construction and interpretation of the insurance policy.   The construction of an insurance policy is the process of determining the policy's legal effect; interpretation is the process of determining the meaning of the words used in the policy.  *See Hornick v. Owners Ins. Co.*, 511 N.W.2d 370, 371 (Iowa 1993).  "When the

---

[1]The precise basis of the district court's coverage decision is not clear.  The court noted that Scott claimed the exclusion was "ambiguous" and alternatively that "public policy demands coverage for him under the underinsured motorist provisions of the policy."  The court discussed both theories together, concluding they were "inextricably intertwined."  After a short discussion of Iowa's UIM statute, the court ruled:

> In order to comply with the dictates of Chapter 516A of the Iowa Code and at the same time be clear and unambiguous, exclusions should very clearly state which coverages within the policy it intends to exclude certain persons from.  Progressive has not done that in this case and this Court concludes that coverage under the underinsured motorist provisions of the policy must apply to Scott under the undisputed facts of this case.

[2]We do not address the insurer's liability under the UIM coverage for Rhonda's loss-of-consortium claim, as that issue is not raised on appeal.

parties offer no extrinsic evidence on the meaning of policy language, the interpretation and construction of an insurance policy are questions of law for the court." *Lee*, 646 N.W.2d at 406.

"In the construction of insurance policies, the cardinal principle is that the intent of the parties must control; and except in cases of ambiguity this is determined by what the policy itself says." *A.Y. McDonald Indus., Inc. v. Ins. Co. of N. Am.*, 475 N.W.2d 607, 618 (Iowa 1991). "The test for ambiguity is an objective one: Is the language fairly susceptible to two interpretations?" *Iowa Fuel & Minerals, Inc. v. Iowa State Bd. of Regents*, 471 N.W.2d 859, 863 (Iowa 1991). "Only when the policy language is susceptible to two *reasonable* interpretations do we find an ambiguity." *Kibbee v. State Farm Fire & Cas. Co.*, 525 N.W.2d 866, 868 (Iowa 1994). In determining whether a policy provision is subject to two equally proper interpretations, we read the insurance contract " 'as an entirety rather than seriatim by clauses.' " *Cairns v. Grinnell Mut. Reins. Co.*, 398 N.W.2d 821, 825 (Iowa 1987) (quoting *Archibald v. Midwest Paper Stock Co.*, 176 N.W.2d 761, 763 (Iowa 1970)). Moreover, the court "avoids straining the words or phrases of the policy 'to impose liability that was not intended and was not purchased.' " *Id.* at 824 (quoting *Gateway State Bank v. N. River Ins. Co.*, 387 N.W.2d 344, 346 (Iowa 1986)).

"An insurer assumes a duty to define any limitations or exclusionary clauses in clear and explicit terms." *Hornick*, 511 N.W.2d at 374. Thus, when an exclusionary provision is fairly susceptible to two reasonable constructions, the construction most favorable to the insured will be adopted. *Cairns*, 398 N.W.2d at 824. Nonetheless, if there is no ambiguity, the court "will not 'write a new contract of insurance' " for the

parties. *Id.* (quoting *Stover v. State Farm Mut. Ins. Co.,* 189 N.W.2d 588, 591 (Iowa 1971)).

Notwithstanding the principle that the plain meaning of an insurance contract generally prevails, this court has recognized that statutory law may also affect the interpretation and validity of policy provisions. *Lee,* 646 N.W.2d at 406. When a statute authorizes a contract of insurance, " '[t]he statute itself forms a basic part of the policy and is treated as if it had actually been written into the policy.' " *Id.* (quoting *Tri-State Ins. Co. v. De Gooyer,* 379 N.W.2d 16, 17 (Iowa 1985)). Consequently, when construing a contract provision that affects underinsured motorist coverage, we must review not only the language of the policy but the terms of the UIM statute, Iowa Code chapter 516A, as well. *Hornick,* 511 N.W.2d at 372.

**IV. Interpretation of Policy.**

**A. Policy Provisions.** Because exclusions must be interpreted in the context of the entire contract, we commence our analysis with a brief overview of the policy. The policy begins with a section entitled "general definitions." The contract then has five parts, with each part dedicated to a particular type of coverage. These coverages include "liability to others," "medical payments," "uninsured/underinsured motorist," "damage to a vehicle," and "roadside assistance." Each part contains an insuring agreement, additional definitions, exclusions, and other matters specific to that particular coverage. After the parts relating to these five coverages, the contract contains sections entitled "general provisions" and "named driver exclusion." The named driver exclusion provides:

> If **you** have asked **us** to exclude any person from coverage under this policy, then **we** will not provide coverage for any claim arising from an **accident** or **loss** involving a motorized vehicle being operated by that excluded person. THIS

INCLUDES ANY CLAIM FOR DAMAGES MADE AGAINST **YOU**, A **RELATIVE**, OR ANY OTHER PERSON OR ORGANIZATION THAT IS VICARIOUSLY LIABLE FOR AN **ACCIDENT** ARISING OUT OF THE OPERATION OF A MOTORIZED VEHICLE BY THE EXCLUDED DRIVER.[3]

The policy also contains a declarations page that shows Rhonda as a "Named insured" and Scott as an "excluded driver." In addition to the contract itself, a separate document entitled "Named Driver Exclusion Election" similarly states: "No coverage is provided for any claim arising from an accident or loss involving a motorized vehicle operated by an excluded person." Scott was identified as an excluded driver in this document, and the document was signed by Rhonda.[4]

**B. Parties' Arguments.** Progressive argues the exclusion is unambiguous and by its clear terms applies to "*any* claim arising from an accident or loss involving a motorized vehicle being operated by [the] excluded person." (Emphasis added.) The insurer points out it is undisputed Scott was an excluded person, he was operating a motorized

---

[3]Terms defined in the policy appear in boldface. The all-capital-letters emphasis is also found in the policy. In subsequent quotations of the exclusion in this opinion, we have eliminated the boldface as well as the emphasis supplied by using all capital letters.

[4]The complete contents of this document follows:

You have named the following persons as excluded drivers under this policy:

SCOTT THOMAS        Date of Birth:   9/17/74

No coverage is provided for any claim arising from an accident or loss involving a motorized vehicle operated by an excluded person. This includes any claim for damages made against you, a relative, or any other person or organization that is vicariously liable for an accident arising out of the operation of a motorized vehicle by the excluded driver.

I understand and agree that this Named Driver Exclusion election shall apply to this policy and any renewal, reinstatement, substitute, amended, altered, modified, or replacement policy with this company or any affiliated company, unless a named insured revokes this election.

Signature of Named Insured                          Date

[signed by Rhonda Thomas]                          8-3-04

vehicle at the time of the accident, and his claim arises from that accident.

The plaintiffs contend an ambiguity is created when one views in context the language upon which Progressive relies. They note the named driver exclusion is included in the general provisions section of the policy, not in the specific exclusions listed in the uninsured/underinsured motorist (UM/UIM) coverage part. They also rely on the second sentence of the exclusion, which specifically refers to coverage for vicarious liability, a claim falling within the liability coverage, but does not expressly mention the UM/UIM coverage. These circumstances, the plaintiffs argue, might lead an ordinary person to conclude the named driver exclusion affected liability coverage only, thus creating an ambiguity that should be resolved in favor of the insured.

**C. Discussion.** To address these arguments, we consider "what the policy itself says." *A.Y. McDonald Indus., Inc.*, 475 N.W.2d at 618. The first sentence of the exclusion states: "If you have asked us to exclude any person from coverage under this policy, then we will not provide coverage for any claim arising from an accident or loss involving a motorized vehicle being operated by that excluded person." We agree with the insurer that this sentence, at least when considered in isolation, clearly and unambiguously excludes coverage for Scott's UIM claim. The word "you" is defined in the policy as the person shown as the named insured on the declarations page. For this policy, that person is Rhonda. There is no dispute that Rhonda asked the insurer "to exclude [a] person from coverage under this policy" and that person was Scott. It is also undisputed that the UIM claim asserted by Scott arose from an accident involving a motorized vehicle being operated by Scott, the excluded person.

It is significant there is no limiting language in the first sentence of the exclusion that would indicate an intent that the exclusion does not apply to claims brought under the UM/UIM coverage. To the contrary, the exclusion encompasses "any claim." We have previously held that the use of the word "any" in a statute "means all or every."[5] *State v. Bishop*, 257 Iowa 336, 341, 132 N.W.2d 455, 458 (1965); *accord Lopez v. Dairyland Ins. Co.*, 890 P.2d 192, 195 (Colo. Ct. App. 1994) (interpreting word "any" in named driver exclusion to "mean[] 'every,' 'all,' 'the whole of,' and 'without limit' " (quoting *Webster's Third New International Dictionary* 97 (1986)); *State Farm Auto. Ins. Co. v. Kiehne*, 641 P.2d 501, 502 (N.M. 1982) (interpreting word "any" in named driver exclusion to mean "without limit"). The word "claim" means "a demand for compensation, benefits or payment." *Webster's Third New International Dictionary* 414 (unabr. ed. 2002). *See generally Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd. v. Farmland Mut. Ins. Co.*, 568 N.W.2d 815, 818 (Iowa 1997) (stating that in searching for the ordinary meaning of a policy term, "we often look to dictionaries"). Giving the words in the contract their ordinary meaning, we think the first sentence of the named driver exclusion clearly encompasses the UIM

_____

[5]Cases interpreting language in statutes are persuasive authority in interpreting contractual language. In both situations, the court strives to determine intent, the legislature's intent in the case of a statute and the parties' intent in the case of a contract. *See A.Y. McDonald Indus., Inc.*, 475 N.W.2d at 619 (stating with respect to contracts of insurance that "the cardinal principle is that the intent of the parties must control"); *State v. Bishop*, 257 Iowa 336, 339, 132 N.W.2d 455, 457 (1965) (stating "[t]he first principle in construing a statute" is that "the courts search for legislative intent as shown by what the legislature said"). Additionally, in both contexts the words of the statute or contract are given their ordinary meaning in the absence of a definition in the statute or contract. *See State v. Muhlenbruch*, 728 N.W.2d 212, 214 (Iowa 2007) ("In the absence of a legislative definition, words in a statute are given their ordinary meaning."); *Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd. v. Farmland Mut. Ins. Co.*, 568 N.W.2d 815, 818 (Iowa 1997) ("When a policy term is not defined in the policy, . . . we give the term its ordinary meaning.").

claim asserted by Scott, unless other provisions in the policy give rise to an ambiguity. *See Progressive N. Ins. Co. v. Schneck*, 813 A.2d 828, 831 (Pa. 2002) (holding nearly identical exclusion of " 'any claim' . . . unambiguously operates to bar recovery of UIM benefits under policy when driver is excluded"); *cf. Nelson v. Progressive Cas. Ins. Co.*, 162 P.3d 1228, 1234 (Alaska 2007) (holding nearly identical policy language "plainly indicates that any claim arising from [the excluded driver's] operation of the automobile is not covered," including negligent entrustment claim against the named insured); *O'Brien v. Dorrough*, 928 P.2d 322, 325–26 & n.10 (Okla. Civ. App. 1996) (holding similar exclusion excluding coverage for "any loss" was "clear and unambiguous" and excluded coverage for UM claims even though such claims were not expressly mentioned in the exclusion).

We turn now to the plaintiffs' contention that the exclusion is ambiguous when considered in context. The plaintiffs assert the second sentence of the exclusion clouds the meaning of the first sentence. They argue that, when the two sentences are read together, the "clear meaning" of the exclusion is that it "applies only when the excluded person is liable for an accident." Based on the ordinary meaning of the words used in the named driver exclusion, we do not think this provision is subject to the interpretation suggested by the plaintiffs.

The second sentence of the exclusion states: "This includes any claim for damages made against you, a relative, or any other person or organization that is vicariously liable for an accident arising out of the operation of a motorized vehicle by the excluded driver." As the plaintiffs acknowledge, this sentence addresses vicarious liability claims arising out of the excluded driver's operation of a motorized vehicle. The sentence begins with the words "this includes." The word "this," which

immediately follows the first sentence of the exclusion, obviously refers to the exclusion set forth in the preceding sentence. Thus, the exclusion described in the first sentence "includes" vicarious liability claims arising out of the excluded driver's operation of a motor vehicle. *See Webster's Third New International Dictionary* 1143 (defining "include" as "to take in, enfold, or comprise as a discrete or subordinate part or item of a larger aggregate, group, or principle"). We agree with the insurer that the second sentence of the exclusion clarifies that, when Scott Thomas is the driver, coverage of "any claim" is excluded, not only for Scott, but for others who are alleged to be vicariously liable.

The plaintiffs point out, if the first sentence of the exclusion is interpreted to be all-inclusive, the second sentence is superfluous. In light of the insurer's duty to define "exclusionary clauses in clear and explicit terms," *Hornick*, 511 N.W.2d at 374, we doubt that the clarifying language of the second sentence could properly be considered superfluous. In any event, notwithstanding our desire to interpret a policy so as not to render any part superfluous, "we will not do so when that [interpretation] is inconsistent with the structure and format of the [provision] and when that [interpretation] is otherwise unreasonable." *Kibbee*, 525 N.W.2d at 869. In the named driver exclusion, the first sentence unambiguously excludes "any claim" arising out of the excluded driver's operation of a motor vehicle. The second sentence clearly states that this exclusion "includes" claims of vicarious liability. To interpret the second sentence as limiting the scope of the first sentence to only instances when the excluded driver is liable would result in a strained and unnatural interpretation of the contractual language. *See id.* at 868–69 ("We do not indulge in a strained or unnatural interpretation of policy language merely to find ambiguity.").

For these reasons, we conclude the second sentence of the named driver exclusion cannot reasonably be interpreted as a limitation on the exclusion of "any claim" as stated in the first sentence of the provision. *See Nelson*, 162 P.3d at 1234–35 (holding second sentence of a nearly identical exclusion did not limit the scope of the exclusion). Consequently, the second sentence of the exclusion does not create an ambiguity. *See id.* at 1234 (holding exclusion was not ambiguous). To the contrary, the second sentence confirms the broad scope of the exclusion stated in the first sentence by expressly stating that the exclusion "includes" claims of vicarious liability asserted against persons other than the excluded driver.

The plaintiffs claim an ambiguity also arises from the fact that the named driver exclusion is placed at the end of the policy rather than in the UM/UIM coverage part. But the placement of the exclusion after the "general provisions" of the policy is entirely consistent with an interpretation of the exclusion as applying to "any claim," regardless of the specific coverage under which the claimant seeks to recover. If, in fact, the exclusion applies only to the liability coverage, as plaintiffs contend, it is more logical that the exclusion would have been placed in the policy part for "liability to others." We do not think the location of the exclusion supports an interpretation limiting the exclusion to the liability coverage. *See Rockford Mut. Ins. Co. v. Econ. Fire & Cas. Co.*, 576 N.E.2d 1141, 1144–45 (Ill. App. Ct. 1991) (holding location of named driver exclusion in endorsement did not make it ambiguous; exclusion applied to "all coverage afforded by [the] policy," including the UM coverage).

In summary, we hold the named driver exclusion is unambiguous. By the plain meaning of its terms, this provision excludes coverage for

*any* claim that arises from the excluded driver's operation of a motor vehicle, including underinsured motorist claims. *Cf. Castaneda v. Progressive Classic Ins. Co.,* 166 S.W.3d 556, 561 (Ark. 2004) (holding nearly identical named driver exclusion "was plain and unambiguous" and excluded claim brought under UM coverage); *Kiehne,* 641 P.2d at 502 (holding named driver exclusion excluding "any kind" of liability was "clear and unambiguous" and excluded coverage for UM claim even though UM coverage was not specifically mentioned in the exclusion).

## V. Effect of Underinsured Motorist Statute.

Having determined the policy unambiguously excludes coverage for UIM claims arising from Scott's operation of a motor vehicle, we must now consider whether that interpretation is inconsistent with Iowa's underinsured motorist statute. The plaintiffs claim the "Named Driver Exclusion Election" signed by Rhonda does not satisfy the statutory requirement that UIM coverage be rejected in writing. In addition, they contend the public policy evidenced by the UIM statute is violated by the named driver exclusion.

**A. Compliance with Chapter 516A.** Iowa Code section 516A.1 requires that automobile liability policies issued in this state include uninsured and underinsured motorist coverage "for the protection of persons insured under such policy." Iowa Code § 516A.1 (2001). "However, the named insured may reject [some or all of such coverages], by written rejections signed by the named insured." *Id.* "If rejection is made on a form or document furnished by an insurance company, . . . it shall be on a separate sheet of paper which contains only the rejection and information directly related to it." *Id.* The plaintiffs argue the statutory rejection requirement was not satisfied because the separate

writing signed by Rhonda Thomas did not clearly state which coverages were excluded.

Before we address this issue, however, we must determine whether Progressive was obligated to provide UIM coverage to Scott so as to trigger the written-rejection requirement. As this court observed in *Hornick*, we have adopted the "prevailing view" that "persons who *must* be insured by the underinsured motorist insurance are those who are protected by the liability coverage." 511 N.W.2d at 373 (citing *Kats v. Am. Family Mut. Ins. Co.*, 490 N.W.2d 60, 62 (Iowa 1992)); *accord* Iowa Code § 516A.1 (providing underinsured motorist coverage is only required "for the protection of persons insured under such policy"). In *Kats*, the named insured signed an amendment to his automobile liability policy that added a named driver exclusion listing his stepson.[6] 490 N.W.2d at 62. We concluded the stepson was not otherwise insured under the policy "because of the specific exclusion for the [stepson]." *Id.* Therefore, we held the insurer was not required to provide UIM coverage for the stepson. *Id.*

The same result is required here. Like the stepson in *Kats*, Scott was specifically excluded from coverage by the named driver exclusion. Because Scott had no liability coverage under the policy, Progressive was not required to offer UIM coverage to him. *See id.* Therefore, section 516A.1 does not require a written rejection of UIM coverage as a condition of Progressive's exclusion of Scott from UIM coverage. *See*

---

[6]The exclusion in *Kats* provided:

> This policy does not apply under any of the coverages to any vehicle in the care, custody, or control of, or while operated by Mulder, Keith A. or any other person with his or her permission or at his or her direction.

*Kats*, 490 N.W.2d at 62.

*Castaneda*, 166 S.W.3d at 563 (Imber, J., concurring) (stating because statute required UM coverage "only when there is liability coverage" and since named insured's son, who was driving vehicle at time of accident, was subject of named driver exclusion, insurer was not required to obtain a rejection of coverage).

**B. Public Policy.** The plaintiffs argue that, even if the insurance policy excludes UIM coverage for Scott when he is operating a motorized vehicle, the contract should not be enforced because to do so would violate the public policy underlying section 516A.1. "We have stated that the term 'public policy' is not susceptible of an exact definition, but 'a court ought not enforce a contract which tends to be injurious to the public or contrary to the public good.'" *Principal Cas. Ins. Co. v. Blair*, 500 N.W.2d 67, 69 (Iowa 1993) (quoting *Walker v. Am. Family Mut. Ins. Co.*, 340 N.W.2d 599, 601 (Iowa 1983)).

> "[P]ublic policy" is not determined by this court's "generalized concepts of fairness and justice" or our determination of what might be most just in a particular case. " 'We must look to the Constitution, statutes, and judicial decisions of [this] state, to determine [our] public policy and that which is not prohibited by statute, condemned by judicial decision, nor contrary to the public morals contravenes no principle of public policy.' "

*Claude v. Guaranty Nat'l Ins. Co.*, 679 N.W.2d 659, 663 (Iowa 2004) (quoting *Harvey v. Care Initiatives, Inc.*, 634 N.W.2d 681, 686 (Iowa 2001) and *In re Marriage of Witten*, 672 N.W.2d 768, 780 (Iowa 2003)). " 'The power to invalidate a contract on public policy grounds must be used cautiously and exercised only in cases free from doubt.' " *Grinnell Mut. Reins. Co. v. Jungling*, 654 N.W.2d 530, 540 (Iowa 2002) (quoting *DeVetter v. Principal Mut. Life Ins. Co.*, 516 N.W.2d 792, 794 (Iowa 1994)).

The plaintiffs assert section 516A.1 evidences a public policy that all automobile insurance policies include UIM coverage unless rejected

by the named insured. The public policy underlying the UIM statute is not so broad, however. As we have discussed, this court has consistently recognized that section 516A.1 requires UIM coverage only for persons "who are protected by the liability coverage." *Hornick*, 511 N.W.2d at 373. Here, Scott is not protected by the liability coverage, and therefore, chapter 516A does not require that he be protected by the UIM coverage. Consequently, the public policy of chapter 516A is not thwarted by enforcement of the named driver exclusion. *Cf. Lopez*, 890 P.2d at 196 (holding public policy of UM statute not violated by exclusion of UM coverage for passenger of vehicle driven by excluded driver); *Gheae v. Founders Ins. Co.*, 854 N.E.2d 419, 422–23 (Ind. Ct. App. 2006) (holding named driver exclusion eliminating liability coverage as well as UM coverage did not contravene UM statute because statute required UM coverage "only if the claimant otherwise qualifies for liability coverage under the policy").

The plaintiffs also contend that, because Scott would arguably have been covered under the UIM provision had he been a pedestrian, it does not further the purpose of UIM protection to deny coverage when he is the victim of an underinsured motorist. They claim it should not matter whether he was a pedestrian or a driver. But that distinction is at the core of the public interest underlying named driver exclusions. States that have upheld the validity of named driver exclusions note such exclusions further

> [the] public policy of protecting all potential claimants from damages resulting from automobile accidents by enabling drivers with family members having poor driving records to procure affordable insurance, rather than obtaining coverage from an assigned risk pool at a greater cost or not securing insurance at all.

*St. Paul Fire & Marine Ins. Co. v. Smith*, 787 N.E.2d 852, 858 (Ill. App. Ct. 2003) (citing cases from Delaware, Oklahoma, Texas and Utah). Importantly, these exclusions also deter "insured drivers from entrusting their vehicles to unsafe excluded drivers which [keeps] those unfit drivers off the road." *Id.*

Requiring coverage of an excluded driver whenever the excluded driver is not at fault (an after-the-fact determination) would *encourage* such unfit drivers to take a chance driving, hoping they would not drive negligently, rather than *deterring* them from driving. Not only would the deterrent effect of the exclusion be undermined, the general public would be put at greater risk. Under the plaintiffs' argument, if an excluded driver is in an accident while operating a motor vehicle and is not at fault, the excluded driver will have uninsured or underinsured coverage for his damages. Unfortunately, if the excluded driver *is* at fault, victims of his fault will not be so fortunate. In that instance, the exclusion would apply, so there would be no liability coverage for damages sustained by the unfit driver's victims and the public policy of protecting potential claimants from such drivers would be undermined. We question whether it is in the public interest to "rewrite" the named driver exclusion in such a way that more protection is provided to the excluded driver than to the general public. Because the exclusion as written promotes the public policy underlying named driver exclusions, we will not invalidate it or restrict its application as urged by the plaintiffs. *See O'Brien*, 928 P.2d at 324, 326 (refusing to limit named driver exclusion to instances when named driver was negligent, rejecting argument that applying exclusion to UM coverage violated public policy); *Schneck*, 813 A.2d at 832 (holding identical exclusion was consistent with "public policy of cost containment and consumer choice" evidenced by statutory

scheme that tied UIM coverage to liability coverage and authorized named driver exclusions).

Finally, we note that our legislature has implicitly authorized named driver exclusions in automobile insurance policies issued in Iowa, apparently in recognition of the public value of such exclusions. Section 515D.4 provides:

> A person shall not be excluded from the [automobile insurance] policy unless the exclusion is based on one or more of the following reasons, *or is agreed upon by both the named insured and the insurer . . . .*

Iowa Code § 515D.4(2) (emphasis added). Significantly, section 515D.4(2) allows the parties to an insurance contract to exclude a person "from the *policy.*" (Emphasis added.) The statutory authorization is not limited to the liability coverage of the insurance policy. Thus, our legislature has made a policy decision that exclusions such as the one at issue here are not contrary to the public good.

In view of the legislature's authorization of named driver exclusions and its decision to require UIM coverage only for drivers protected by the liability coverage of the policy, we conclude the named driver exclusion in Progressive's policy does not violate the public policy of this state. *See Schneck,* 813 A.2d at 834 (holding nearly identical exclusion "did not violate public policy," noting "there is no clear legislative pronouncement of public policy requiring UM/UIM coverage for a named driver exclusion"). Therefore, we reject the plaintiffs' argument that the exclusion is unenforceable.

### VI. Summary and Disposition.

The named driver exclusion is unambiguous and excludes coverage for Scott's underinsured motorist claim arising out of his operation of a motorized vehicle. Enforcement of the exclusion under the

circumstances before us does not violate Iowa's underinsured motorist statute and is not contrary to public policy.

The district court erred in granting summary judgment to Scott Thomas and in denying summary judgment to Progressive on Scott's claim.  We reverse the district court's summary judgment ruling and remand this case to the district court for entry of summary judgment in favor of Progressive on Scott Thomas's claim.

**REVERSED AND REMANDED.**