Diane K. STINTON, Individually and as Administrator of the Estate of Gene Allan Stinton, Deceased, Plaintiff,

v.

OLD REPUBLIC INSURANCE COMPANY, Defendant.

No. C15–4019–LTS

United States District Court, N.D. Iowa, Western Division.

Signed February 10, 2016

Scott L. Bixenman, Murphy, Collins & Bixenman, PLC, Lemars, IA, for Plaintiff.

Jeffrey L. Goodman, Goodman & O'Brien, PC, West Des Moines, IA, William D. Howard, Howard Law Group, Grand Rapids, MI, for Defendant.

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

LEONARD T. STRAND, UNITED STATES MAGISTRATE JUDGE

### I. INTRODUCTION

This case is before me on a motion (Doc. No. 16) for summary judgment filed by defendant Old Republic Insurance Company (Old Republic). Plaintiff Diana K. Stinton, individually and as administrator of the estate of Gene Allan Stinton, deceased (Ms. Stinton) has filed a resistance (Doc. No. 17) and Old Republic has filed a reply (Doc. No. 18). While Old Republic has requested oral argument, I find that the issues have been thoroughly briefed such that oral argument is not necessary and would serve only to delay these proceedings. *See* N.D. Ia. L.R. 7(c). The motion is fully submitted and ready for decision.

### II. PROCEDURAL HISTORY

Ms. Stinton commenced this action by filing a petition (Doc. No. 3) in the Iowa District Court for Plymouth County on February 6, 2015. In general, Ms. Stinton alleges that Old Republic is obligated under a policy of insurance to pay underinsured motorist (UIM) benefits as a result of the death of her husband, Gene Allan Stinton (Mr. Stinton). Doc. No. 3 at 4–6. Old Republic filed a notice (Doc. No. 2) of removal to this court on March 13, 2015, invoking this court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. Old Republic then filed an answer in which it denied Ms. Stinton's claim and raised certain defenses.

Upon the unanimous consent of the parties, this case was assigned to me on June 16, 2015, pursuant to 28 U.S.C. § 636(c)(3). Doc. No. 13. Trial is scheduled to begin April 18, 2016. Doc. No. 14. On December 18, 2015, Old Republic filed its motion for summary judgment.

### III. RELEVANT FACTS

The following facts are undisputed: [1]

---

1. Certain facts are deemed undisputed by operation of Local Rule 56(b), which provides as follows in relevant part:

   A response to an individual statement of material fact that is not expressly admitted must be supported by references to those specific pages, paragraphs, or parts of the pleadings, depositions, answers to interrogatories, admissions, exhibits, and affidavits that support the resisting party's refusal to admit the statement, with citations to the appendix containing that part of the record. The failure to respond, with appropriate citations to the appendix, to an individual

On or about September 12, 2013, Mr. Stinton, while employed by Archer Daniels Midland Alliance Nutrition Inc. (Alliance), was operating a grain truck when a semitractor and trailer owned by American Outlaw Transportation, Inc. (American Outlaw), and driven by Tom Laidlaw, ran a stop sign, striking and killing Mr. Stinton. As of the date of the accident, a policy of insurance issued by Artisan's and Trucker's Casualty Company insured the vehicle owned by American Outlaw. That policy included bodily injury limits of $1,000,000. That amount has been paid to Mr. Stinton's estate.

Mr. Stinton also had an underinsured policy of insurance through Farm Bureau with bodily limits of $100,000. That amount has been paid to Ms. Stinton. Ms. Stinton has also received workers' compensation benefits through Alliance in the amount of approximately $85,000.

The Alliance grain truck that Mr. Stinton was operating at the time of his death was licensed in South Dakota but was principally garaged, maintained and loaded in Iowa. As of the date of the accident, Alliance was insured through Old Republic by policy number MWTB 21963 and MWTB 21604, with a policy period of July 1, 2013, to July 1, 2014 (the Policy). The declarations page shows "Archer Daniels Midland Co." (ADM) as the Named Insured under the Policy. An endorsement to the Policy states that the Named Insured, as shown on the declarations page, is extended to include the Named Insured and any and all owned, controlled, associated, affiliated or subsidiary companies or corporations. Mr. Stinton's employer, Alliance, is a subsidiary of ADM. Thus, Alliance is an additional Named Insured under the Policy.

On April 12, 2013, Michael Lusk, as Vice–President of Insurance and Risk Management of ADM, executed a form entitled "Rejection of Uninsured Motorists Coverage and/or Underinsured Motorists Coverage (Iowa)." Doc. No. 16–5 at 210. The form was furnished by Old Republic and was contained on a separate sheet of paper that included only the rejection and information directly related to the rejection. Mr. Lusk checked a box "agreeing that the Underinsured Motorists Coverage afforded in the policy is hereby rejected." *Id.* Mr. Lusk knowingly rejected UIM coverage for all insureds under the policy. He was acting with the express authority of ADM when he executed the UIM selection form at issue.

The UIM form stated, as follows: "The individual signing this Rejection expressly represents and warrants that he/she is duly authorized to do so on behalf of the named insured and all additional insureds ..." Doc. No. 16–5 at 210. Mr. Lusk was, in fact, duly authorized to represent the Named Insured as well as all additional insureds in signing the Rejection of Uninsured Motorists Coverage and/or Underinsured Motorists Coverage (Iowa).

Under Section II of the Policy (Liability), Mr. Stinton, as an employee of Alliance, was an additional insured under the Policy. On the Policy's declarations page, the "Limit" section for UIM coverage stated: "$ See UIM Forms". Doc. No. 16–3 at 6. The Policy contained UIM coverage forms for each of the 50 states. Those

---

statement of material fact constitutes an admission of that fact.

N.D. Ia. L.R. 56(b). In resisting Old Republic's motion for summary judgment, Ms. Stinton filed a response to Old Republic's statement of undisputed facts in which she purported to deny the facts set forth in paragraphs 13, 16, 17, 19, 23 and 24 of Old Republic's statement. *See* Doc. No. 17–1 at 3–4. However, Ms. Stinton did not provide citations to the record in support of her denials. As such, she is deemed to have admitted all such facts.

forms varied according to each state's respective laws. ADM rejected underinsured and uninsured motorist coverage in every state it was permitted to do so.

## IV. SUMMARY JUDGMENT STANDARDS

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed.R.Civ.P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

A material fact is one that " 'might affect the outcome of the suit under the governing law.' " *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, "the substantive law will identify which facts are material." *Id.* Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id.*

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)), or when " 'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir.2005) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249–50, 106 S.Ct.

2505, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248–49, 106 S.Ct. 2505. The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods*, 415 F.3d 908 (8th Cir.2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587–88, 106 S.Ct. 1348. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir.2004). Instead, "the court's function is to determine whether a dispute

about a material fact is genuine." *Quick v. Donaldson Co., Inc.,* 90 F.3d 1372, 1376–77 (8th Cir.1996).

## V. ANALYSIS

In seeking the entry of summary judgment in its favor, Old Republic argues that UIM benefits are not payable under the Policy because ADM expressly rejected UIM coverage when it purchased the Policy. Old Republic contends that this rejection occurred in accordance with Iowa law. Old Republic also contends that even if UIM coverage was not effectively rejected, Iowa law provides that the coverage limits would be just $20,000, an amount far below what Mr. Stinton's estate has already recovered. Finally, Old Republic argues that because the two contracting parties (Old Republic and ADM) agree that the Policy does not provide UIM coverage, the court may not write such unintended coverage into the Policy.

Ms. Stinton argues that there are genuine issues of material fact as to whether ADM actually and effectively rejected UIM coverage. She further contends that if no rejection occurred, then UIM coverage exists with a limit of $10,000,000, which is the Policy's general liability limit.[2]

### A. Overview of Applicable Iowa Law

#### 1. Insurance Contracts in General

The Iowa Supreme Court recently summarized Iowa law as follows:

> Our rules governing the construction and interpretation of insurance policies are well-settled. "The cardinal principle ... is that the intent of the parties at the time the policy was sold must control." *LeMars Mut. Ins. Co. v. Joffer,*

574 N.W.2d 303, 307 (Iowa 1998). Except in cases of ambiguity, we determine "the intent of the parties by looking at what the policy itself says." *Boelman v. Grinnell Mut. Reinsurance Co.,* 826 N.W.2d 494, 501 (Iowa 2013). If a term is not defined in the policy, we give the words their ordinary meaning. *Id.* "We will not strain the words or phrases of the policy in order to find liability that the policy did not intend and the insured did not purchase." *Id.*

"[A] policy is ambiguous if the language is susceptible to two reasonable interpretations" when the contract is read as a whole. *Id.* "If the policy is ambiguous, we adopt the construction most favorable to the insured." *Id.* at 502. "An insurance policy is not ambiguous, however, just because the parties disagree as to the meaning of its terms." *Id.* Moreover, " '[a]mbiguity is not present merely because the provision "could have been worded more clearly or precisely than it in fact was." ' " *Am. Family Mut. Ins. Co. v. Corrigan,* 697 N.W.2d 108, 114 (Iowa 2005) (quoting *Cairns v. Grinnell Mut. Reins. Co.,* 398 N.W.2d 821, 824 (Iowa 1987)). "If an insurance policy and its exclusions are clear, the court 'will not "write a new contract of insurance" ' for the parties." *Boelman,* 826 N.W.2d at 502 (quoting *Thomas v. Progressive Cas. Ins. Co.,* 749 N.W.2d 678, 682 (Iowa 2008)). We construe exclusions strictly against the insurer. *Id.* Nevertheless, "we must enforce unambiguous exclusions as written." *Bituminous Cas. Corp. v. Sand Livestock Sys., Inc.,* 728 N.W.2d 216, 222 (Iowa 2007).

---

**2.** In the "Factual Background" section of her brief, Ms. Stinton includes a discussion of the fact that the truck Mr. Stinton was driving at the time of the accident was licensed in South Dakota. Doc. No. 17–4 at 8–10. However, the "Argument" section of her brief includes

no argument that South Dakota law applies, or that UIM benefits are owing under South Dakota law. *Id.* at 10–16. As such, I will analyze Ms. Stinton's claim, and Old Republic's motion, only under Iowa law.

*Amish Connection, Inc. v. State Farm Fire and Cas. Co.,* 861 N.W.2d 230, 236 (Iowa 2015).

### 2. UIM Coverage

■ The Iowa Code includes the following provision:

**516A.1 Coverage Included In Every Liability Policy—Rejection By Insured.**

No automobile liability or motor vehicle liability insurance policy insuring against liability for bodily injury or death arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state, unless coverage is provided in such policy or supplemental thereto, for the protection of persons insured under such policy who are legally entitled to recover damages from the owner or operator of an uninsured motor vehicle or a hit-and-run motor vehicle or an underinsured motor vehicle because of bodily injury, sickness, or disease, including death resulting therefrom, caused by accident and arising out of the ownership, maintenance, or use of such uninsured or underinsured motor vehicle, or arising out of physical contact of such hit-and-run motor vehicle with the person insured or with a motor vehicle which the person insured is occupying at the time of the accident. Both the uninsured motor vehicle or hit-and-run motor vehicle coverage, and the underinsured motor vehicle coverage shall include limits for bodily injury or death at least equal to those stated in section 321A.1, subsection 11. The form and provisions of such coverage shall be examined and approved by the commissioner of insurance.

However, the named insured may reject all of such coverage, or reject the uninsured motor vehicle (hit-and-run motor vehicle) coverage, or reject the underinsured motor vehicle coverage, by written rejections signed by the named insured. If rejection is made on a form or document furnished by an insurance company or insurance producer, it shall be on a separate sheet of paper which contains only the rejection and information directly related to it. Such coverage need not be provided in or supplemental to a renewal policy if the named insured has rejected the coverage in connection with a policy previously issued to the named insured by the same insurer.

Iowa Code § 516A.1. Uninsured or underinsured coverage is required only with regard to those who are protected by a policy's liability coverage. *Thomas v. Progressive Cas. Ins. Co.,* 749 N.W.2d 678, 686 (Iowa 2008). As the statute indicates, only the named insured may effectively reject such coverage. *Preferred Risk Ins. Co. v. Cooper,* 638 N.W.2d 717, 719–20 (Iowa 2002).

### B. Did the Named Insured Reject UIM Coverage Under the Policy?

■ As noted above, Alliance was insured under the Policy on the date of the accident. The Policy's declarations page indicates that the Named Insured was ADM, along with "any and all owned, controlled, associated, affiliated or subsidiary companies or corporations." Doc. No. 16–3 at 35. The record includes a form entitled "Rejection of Uninsured Motorists Coverage and/or Underinsured Motorists Coverage (Iowa)" (the Rejection). Doc. No. 16–5 at 210. As required by Section 516A.1, the Rejection was "a separate sheet of paper which contains only the rejection and information directly related to it." *Id.* The Rejection indicates that both underinsured motorist coverage and uninsured motorist coverage were being rejected and contains a signature dated April 12, 2013. *Id.*

By affidavit, Mr. Lusk states that he was the Vice–President of Insurance and Risk Management for ADM at the relevant time and that he is the person who signed the Rejection. Doc. No. 16–3 at 3–4. He states that he was acting with ADM's express authority, as well as with the authorization of all other named insureds, when he signed the form. *Id.* at 4–5. He further states that by signing the form, he "knowingly rejected UIM coverage for all insureds under the policy." *Id.* at 4. Mr. Lusk explains that ADM rejected underinsured and uninsured coverage in every state in which it was permitted to do so. *Id.*

The combination of the Rejection and Mr. Lusk's testimony appears to establish beyond dispute that the named insureds under the Policy rejected UIM coverage in the manner provided by Iowa law. This is especially true in light of Ms. Stinton's failure to comply with Local Rule 56(b), which operates as an admission of all facts set forth in Old Republic's statement of undisputed facts. *See* Note 1, *supra.* Even without considering Local Rule 56(b), however, I find that Ms. Stinton has failed to raise a genuine issue of material fact as to whether ADM effectively rejected UIM coverage.

In resisting the entry of summary judgment, Ms. Stinton suggests that the Rejection may have been created after-the-fact to support Old Republic's denial of her claim. *See, e.g.,* Doc. No. 17–4 at 14 ("The admission by Mr. Farr coupled with the compelling circumstantial evidence surrounding the rejection of UIM coverage in Iowa raises substantial doubt as to the validity of the alleged declination of cover-

age form."). That is, she appears to argue that reasonable jurors could find that Mr. Lusk conspired with others at ADM and Old Republic, after Mr. Stinton's death, to create a back-dated written rejection of UIM coverage. In other words, and while she does not say so quite so strongly, Ms. Stinton contends that Old Republic (and others) are perpetrating a fraud on her and the court. In making this argument, Ms. Stinton relies on certain actions and statements that occurred after the accident.

First, Ms. Stinton recites the history of efforts by W.E. Collins, an attorney representing her and Mr. Stinton's estate, to obtain copies of relevant Policy materials from ADM. Those efforts commenced in October 2013. Ms. Stinton finds it suspicious that a copy of the Rejection was not provided to her until July 24, 2014, only after Mr. Collins wrote a letter to Old Republic demanding payment of $5 million in UIM benefits. Moreover, Ms. Stinton states:

> ADM's own Insurance and Risk Management Coordinator, Greg Farr, who presumably would have a say in the decision to elect or decline coverage, drug his feet when asked for confirmation of UIM coverage under the Old Republic Policy, and eventually flatly admitted that there were no rejections of Iowa UIM coverage.

Doc. No. 17–4 at 13.[3] Ms. Stinton is referring to an email message Mr. Farr sent on December 19, 2013, in response to an inquiry from Mr. Collins. Mr. Farr wrote:

> In Iowa the UND[4] policy is not required by the state as such ADM has

---

**3.** Mr. Farr has provided an affidavit in which he states that he was employed as a claims coordinator for ADM and that his primary role in this matter was to obtain reimbursement from American Outlaw. Doc. No. 18–1 at 27–28. He states that the determination of

ADM's insurance coverage was not within the scope of his job responsibilities. *Id.*

**4.** The parties appear to agree that "UND" is another abbreviation for underinsured motorist coverage.

not taken out coverage. The dec page that I sent you was for our national auto liability policy and if we have UND coverage in certain states there is a separate endorsement for that state providing coverage. There is no such endorsement in Iowa and we do not have UND coverage or any rejection letters. I hope that this helps to explain, but if I can provide additional information that will help please don't hesitate to let me know.

Doc. No. 17–3 at 4. While this communication confirmed ADM's position that it did not have UIM coverage in Iowa, Ms. Stinton finds significance in Farr's statement that ADM had no "rejection letters."

In the context of the email thread between Mr. Farr and Mr. Collins, it is quite possible that Mr. Farr intended to communicate that ADM did not have a copy of the Rejection in its possession. However, such a statement would not mean that the Rejection did not exist. Old Republic, the other party to the insurance contract, has produced the Rejection in this litigation and has provided sworn testimony that the Rejection was contained in its underwriting file. Doc. No. 16–5 at 208–10; Doc. No. 18–1 at 35. Even interpreting Mr. Farr's comment as favorably to Ms. Stinton as possible, it is not an admission that ADM failed to reject UIM coverage in the manner required by Iowa law.

Ms. Stinton also finds significance in the fact the Rejection is not listed in various indices of Policy forms and notices. In particular, the Policy contains a "Policy Holder Notice Index," which lists various state-specific documents, and a "Forms Index" that purports to list all forms made part of the Policy at the time of issuance. Doc. No. 163 at 11–34. Neither index includes the Rejection. *Id.*

Ms. Stinton cites no authority for the proposition that Old Republic was required to list the Rejection in either index, or that the Rejection is invalid if not so listed. The Iowa statute contains no requirement that a written rejection of UIM coverage be identified in a policy index. *See* Iowa Code § 516A.1. Instead, Ms. Stinton's argument appears to be that the failure to list the Rejection is evidence that the document did not exist when the Policy took effect. In other words, she argues that the jury can infer from the omissions that the Rejection is a fraudulent, back-dated document.

While Ms. Stinton is entitled to have all reasonable inferences drawn in her favor, I find that the summary judgment record does not come close to allowing such an inference. As noted above, Old Republic has produced the Rejection itself, along with sworn testimony supporting its authenticity. The various forms listed in the "Forms Index," and attached to the Policy, are almost-uniformly identified as being endorsements that change the terms of the Policy. *See, e.g.,* Doc. No. 16–3 at 70–211. The Rejection is not. Doc. 16–5 at 208–10. Absent authority indicating that Old Republic had a legal obligation to identify the Rejection in the Policy's lists of notices and forms, I find that the lack of such identification falls short of permitting a reasonable inference that the Rejection did not exist.

Ms. Stinton had a full opportunity to conduct discovery in this case. She has not come forward with evidence giving rise to a genuine issue of material fact as to whether ADM properly rejected UIM coverage as permitted by Iowa law. As such, Old Republic is entitled to judgment in its favor as a matter of law.[5]

---

**5.** Because I have found in Old Republic's favor on this issue, I need not address its alternative arguments.

## VI. CONCLUSION

For the reasons set forth herein:

1. Defendant's motion (Doc. No. 16) for summary judgment is granted.

2. Judgment shall enter in favor of defendant Old Republic Insurance Company and against plaintiff Diane K. Stinton, individually and as administrator of the estate of Gene Allan Stinton, deceased.

3. Trial, which is currently scheduled to begin April 18, 2016, is canceled.

4. Because this order disposes of all pending claims, this case is closed.

**IT IS SO ORDERED.**