# IN THE COURT OF APPEALS OF IOWA

No. 21-1105
Filed November 2, 2022

**BRANDI FIPPS,**
    Plaintiff-Appellant,

**vs.**

**PROGRESSIVE UNIVERSAL INSURANCE COMPANY,**
    Defendant-Appellee.
_____

    Appeal from the Iowa District Court for Harrison County, Craig M. Dreismeier, Judge.

    Brandi Fipps appeals the grant of summary judgment in favor of her motor vehicle insurer. **AFFIRMED.**

    Thomp J. Pattermann of the Law Office of Gallner & Pattermann, P.C., Council Bluffs, for appellant.

    Patrick L. Sealey and of Heidman Law Firm, P.L.L.C., Sioux City, for appellee.

    Considered by Bower, C.J., and Schumacher and Ahlers, JJ.

**AHLERS, Judge.**

This appeal calls for us to address what obligations a motor vehicle liability insurance carrier has to provide underinsured motorist (UIM) coverage when a vehicle is replaced under the policy and the insured previously rejected UIM coverage.

Brandi Fipps purchased motor vehicle insurance from Progressive Universal Insurance Company (Progressive) covering a pickup effective June 30, 2017. When purchasing the policy, Fipps rejected uninsured motorist (UM) and UIM coverage.[1] *See* Iowa Code § 516A.1 (2017) (requiring motor vehicle liability insurance policies to provide UM and UIM coverage unless the named insured rejects the coverage). Effective July 24, Fipps replaced the pickup with a sport utility vehicle (SUV). A series of documents titled "Declarations Page," dated June 30, July 24, August 20, and September 3, each specifically stated Fipps rejected UIM coverage on the covered vehicle and that the policy was effective June 30 until December 30.

A little more than a month after substituting vehicles under the policy, Fipps was injured in a motor vehicle collision while driving the SUV. Fipps sought damages for her injuries. She settled her claim against the other driver and then sought UIM coverage under her policy with Progressive. Progressive denied coverage on the basis that Fipps did not have UIM coverage under the policy because she had rejected it. Fipps sued Progressive, claiming breach of the insurance contract. Progressive sought summary judgment. The district court

---

[1] The validity of Fipps's rejection of the UIM coverage is not at issue in this case.

granted summary judgment and dismissed Fipps's suit.  Fipps appeals.

## I.      Standard of Review

We review rulings granting summary judgment for correction of errors at law.  *Garrison v. New Fashion Pork LLP*, 977 N.W.2d 67, 76 (Iowa 2022).  We "view the facts in the light most favorable to the nonmoving party" and "consider on behalf of the nonmoving party every legitimate inference reasonably deduced from the record."  *Id.* (quoting *Morris v. Legends Fieldhouse Bar & Grill, LLC*, 958 N.W.2d 817, 821 (Iowa 2021)).  Summary judgment is properly granted if the moving party shows "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  *Id.* (quoting *EMC Ins. Grp. v. Shepard*, 960 N.W.2d 661, 668 (Iowa 2021)).

## II.     Analysis

The material facts are not disputed.  Instead, Fipps argues she never rejected UIM coverage for the SUV and thus Progressive was required to provide UIM coverage for the SUV under Iowa law.

Fipps's argument requires us to construe and interpret her insurance policy in conjunction with the controlling statute.  *See Thomas v. Progressive Cas. Ins. Co.*, 749 N.W.2d 678, 681 (Iowa 2008) ("The construction of an insurance policy is the process of determining the policy's legal effect; interpretation is the process of determining the meaning of the words used in the policy.").  We say in conjunction with the controlling statute because "[w]hen a statute authorizes a contract of insurance, '[t]he statute itself forms a basic part of the policy and is treated as if it had actually been written into the policy.'"  *Id.* at 682 (second alteration in original) (quoting *Lee v. Grinnell Mut. Reins. Co.*, 646 N.W.2d 403,

406 (Iowa 2002)). "Consequently, when construing a contract provision that affects [UIM] coverage, we must review not only the language of the policy but the terms of the UIM statute, Iowa Code chapter 516A, as well." *Id.* Chapter 516A "is written to protect the insurance consumer, not the policy vendor." *Rodman v. State Farm Mut. Auto. Ins. Co.*, 208 N.W.2d 903, 909 (Iowa 1973). When interpreting language in a statute and an insurance contract, "the court strives to determine intent, the legislature's intent in the case of a statute and the parties' intent in the case of a contract." *Thomas*, 749 N.W.2d at 683 n.5. We avoid "straining the words or phrases of the policy 'to impose liability that was not intended and was not purchased.'" *Id.* at 682 (quoting *Cairns v. Grinnell Mut. Reins. Co.*, 398 N.W.2d 821, 825 (Iowa 1987)).

As the policy must be read in conjunction with the statute, we start with the words of the statute. Iowa Code section 516A.1(1)[2] states:

> No automobile liability or motor vehicle liability insurance policy . . . shall be delivered or issued for delivery in this state . . . unless coverage is provided in such policy or supplemental thereto, for the protection of persons insured under such policy who are legally entitled to recover damages from the owner or operator of an uninsured [or underinsured] motor vehicle . . . caused by accident and arising out of the ownership, maintenance, or use of such uninsured or underinsured motor vehicle.

At a broad level, this provision requires motor vehicle liability policies issued by insurers such as Progressive to include UM and UIM coverage. However, section 516A.1(2) allows the insured to reject such coverage:

---

[2] A 2021 amendment numbered the previously unnumbered paragraphs of section 516A.1. 2021 Iowa Acts ch. 76, § 150(6). Section 516A.1 is otherwise unchanged since 2017. For clarity, we use the current numbering of section 516A.1.

However, the named insured may reject all of such coverage, or reject the uninsured motor vehicle (hit-and-run motor vehicle) coverage, or reject the underinsured motor vehicle coverage, by written rejections signed by the named insured. If rejection is made on a form or document furnished by an insurance company or insurance producer, it shall be on a separate sheet of paper which contains only the rejection and information directly related to it. Such coverage need not be provided in or supplemental to a renewal policy if the named insured has rejected the coverage in connection with a policy previously issued to the named insured by the same insurer.

There is no dispute that Fipps rejected UM and UIM coverage when she first purchased the policy. Fipps's claim is that when she sought coverage for the SUV coverage for that vehicle resulted in a new policy, which triggered Progressive's obligation to provide UM and UIM coverage unless Fipps rejected such coverage and Fipps did not do so. Progressive counters by arguing the substitution of the SUV for the pickup under the policy did not result in a new policy; it was merely a continuation of the existing policy.

To resolve the dispute over whether this is a new policy, we start with the plain language of section 516A.1(1), which requires an insurer to provide UIM coverage when the "policy" is "delivered or issued for delivery." Chapter 516A does not define "policy," "deliver," or "issue," so we look to dictionary definitions for guidance. *See State v. Middlekauff*, 974 N.W.2d 781, 793 (Iowa 2022) (noting that, if the legislature has not provided a definition, we may refer to case law, similar statutes, dictionaries, and common usage to determine a definition). "Policy" in this context means "[a] document containing a contract of insurance." *Policy*, *Black's Law Dictionary* (11th ed. 2019). "Deliver" means to "transfer[ ] something." *Delivery*, *Black's Law Dictionary* (11th ed. 2019). "Issue" means "[t]o send out or distribute officially." *Issue*, *Black's Law Dictionary* (11th ed. 2019).

Thus, section 516A.1(1) only requires an insurer to obtain a rejection of UIM coverage when a document containing a contract of insurance is transferred or sent out. Nothing in the statute requires an insurer to obtain a UIM rejection at other times under the same policy. Likewise, nothing in chapter 516A or the general definition of "policy" requires a new "policy" when providing coverage on a different vehicle. Additionally, our supreme court has found UIM coverage is generally "personal and portable" and "protects and follows the person, not the vehicle." *Hornick v. Owners Ins. Co.*, 511 N.W.2d 370, 372 (Iowa 1993). So, the statute does not support Fipps's claim.

Furthermore, the record establishes that the parties treated coverage on the SUV as a continuation of the same policy and not an entirely new policy. Each Declarations Page shows the same policy continued through the removal of the pickup and the addition of the SUV with the same policy number and the same effective dates.

Also, while the statute is silent on the topic of replacement vehicles, the policy is not. *See, e.g., Whicker v. Goodman*, 576 N.W.2d 108, 110–11 (Iowa 1998) (looking to the policy to resolve coverage issues not addressed by the statute). The policy's language shows that the parties anticipated changes to the motor vehicles covered by the policy. Under the insuring agreement, UIM coverage is available to authorized persons in a "covered auto." The policy defines "covered auto" to include a "replacement auto." The policy defines "replacement auto" as "an auto that permanently replaces an auto shown on the declarations page." The policy also states the replacement auto "will have the same coverage as the auto it replaces." There is no dispute that the SUV replaced the pickup, so

the SUV meets the policy's definition of "replacement auto." By the terms of the policy, the replacement auto "will have the same coverage as the auto it replaces." As Fipps rejected UIM coverage on the pickup, the SUV also lacked UIM coverage. *See Seiple v. Progressive N. Ins. Co.*, 954 F. Supp. 2d 352, 356–60 (E.D. Pa. 2013) (analyzing similar policy language and concluding that adding a new vehicle to an existing policy does not trigger an obligation for the insurer to obtain a new rejection of UIM coverage under Pennsylvania law). Finally, even if it was possible for Fipps to cancel the original policy covering the pickup and begin a new policy covering the SUV, nothing in the record suggests she attempted to do so rather than continuing the existing policy.

For all of these reasons, we find Progressive was not obligated to obtain an additional waiver of UIM coverage on the SUV.

## III. Conclusion

The record establishes Fipps rejected UIM coverage when beginning the motor vehicle insurance policy on the pickup, and nothing in the insurance documents or Iowa law requires Progressive to begin a new policy or otherwise obtain a new rejection of UIM coverage to provide coverage on the replacement SUV. Therefore, we affirm the grant of summary judgment dismissing Fipps's claim for UIM coverage.

**AFFIRMED.**